## JOHN JOHNS v. THE STATE.

### No. 3017.  Decided October 19, 1904.

#### 1.—Murder—Jury—Separation—Practice—Statutes Construed.

Article 725, Code Criminal Procedure, provides that after the jury has been sworn and empaneled to try any case of felony, they shall not be permitted to separate, until they have returned a verdict, unless by permission of the court, with the consent of the attorneys representing the State and the defendant, and in charge of an officer. Upon a trial for murder the court permitted, at different stages of the same, a part of the jury to retire in charge of an officer, without consulting the attorneys on either side. Held, that unless it was shown that any of the jurors were tampered with, or any opportunity offered so that they could have been approached, there was no error, although it would have been better practice to have obtained consent of the attorneys. Distinguishing Defriend v. State, 22 Texas Crim. App., 570; Boyette v. State, 26 Id., 704; McCampbell v. State, 37 Texas Crim. Rep., 607; Darter v. State, 44 S. W. Rep., 850. Following Walker v. State, 51 S. W. Rep., 234.

#### 2.—Same—Jury and Jury Law—Practice.

Where a trial for murder was progressing, the court ordered some benches brought into the court-room, from a room just behind the jury box and one of the jurors who was sitting next to the door leading into said room, stepped into the room and assisted in bringing out one bench, but was not out of sight of the court for five seconds. Held, not a separation under article 725, Code Criminal Procedure.

#### 3.—Same—Misconduct of Jurors—Practice.

Where the deputy sheriff retired from the room where the jurors were sleeping, they having the case on a trial of murder under advisement, with two of the jurors, taking them to a closet and then to an ice cream parlor where they ate ice cream, and then returned them to the jury room to the other portion of the jury, after being absent about half an hour, the sheriff remaining with the main body of the jury, and it being shown that the two jurors did not talk to any one during their absence, there was no reversible error. Following Walker v. State, 51 S. W. Rep., 234.

#### 4.—Same—Other Persons In Same Room With Jury.

Where two persons, who were on the jury for the week, but not on the jury trying the case, were permitted by the court to sleep in the court-room and were kept separate from the jury trying the case, who were also kept in the court-room during the night; neither of said jurors having spoken or communicated with the jury trying the case, there was no reversible error.

#### 5.—Argument of Counsel—Practice.

Where the argument of the district attorney referred to the fact that defendant while on the stand refused to tell where he got the gun with which he killed deceased, saying that if defendant would divulge the facts it would hang him; and besides there was no application by appellant to the court asking that the jury be instructed to disregard the remarks of the State's attorney, there was no error.

#### 6.—Evidence—Self-Serving Declarations.

Where upon trial for murder, the defendant offered testimony that he told his employer on the morning of the homicide, that he had heard deceased was looking for him with a gun and had threatened to kill him, and asked said employer what he must do about it; and that the latter told defendant that if deceased was after defendant with a gun that he would have to protect himself, etc.; it was proper to exclude same as self-serving.

#### 7.—Argument of Counsel—Bill of Exceptions.

Where an exception was taken to the argument of the district attorney with reference to the neglect of defendant to establish the custom of bearing arms

on the plantation where the homicide occurred, the court having excluded such testimony, but the bill of exceptions does not show what the custom was, nor does it appear that a bill of exceptions was taken to the exclusion of any testimony referred to in the bill under discussion, and there was no request by defendant to the court that the jury disregard such argument, there was no error.

**8.—Charge of the Court—Self-Defense.**

See charge on self-defense which is held to be sufficient.

Appeal from the District Court of Matagorda. Tried below before Hon. E. F. Higgins, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The State's testimony showed that on Tuesday before the killing on Thursday, defendant and deceased had an altercation, in which deceased called defendant a d—d liar and thereupon defendant started towards deceased with a knife; the brother of the latter interfering, saying, "Don't you strike him, John, if you do, I'll break your neck." A general fight then ensued in which brick-bats and scantlings were used, but no serious harm was done, and the parties separated, the defendant saying as he went away: "Wait until I come back and I'll fix you." '

On Thursday, the day of the homicide, Lee Jones, the deceased, Hamilton Jones and Anne Judie, an old negress, were at the latter's house. The deceased had a gun in his hand and was standing in about the middle of the shed and about half way between the doors to the two rooms of Aunt Judie's house, and while Lee Jones was talking to Adam Hill at the corner of the shed, at the end next to Adam Hill's house, and Aunt Judie was sitting in one door of her house, some one hollowed, "Hi! Hi!" and fired a gun and deceased turned around and ran in the house and fell dead. After the shot was fired the defendant was seen close to the place of the killing with a gun. As the deceased fell he said, "There, John Jones has shot me for nothing." The deceased was making no demonstration and his gun was pointing muzzle downward when he was shot. The defendant was seen going to the house where deceased was, he had a winchester in his hand and was seen when he fired in the direction of Aunt Judie's house and this was the shot that killed diseased.

The defendant proved threats by deceased and that the latter carried two guns and said he would kill defendant, a day or so before the killing. No further statement of the evidence is required. The court gave the following charge on self-defense:

"If from the acts of Hamilton Jones, if any, or from his words, if any, coupled with his acts, there was created within the mind of the defendant reasonable expectation or apprehension of danger of death or serious bodily injury from the said Hamilton Jones, then defendant had a right to defend himself from such danger or apparent danger, as it reasonably appeared to him at the time viewed from his standpoint. A person unlawfully attacked or about to be attacked is not·

bound to retreat, in order to avoid the necessity of killing his assailant. One who kills another is justified if he acts upon a reasonable expectation or apprehension of danger of death or serious bodily injury at the time he does the killing, which is to be judged from defendant's standpoint. It matters not whether the danger was real or unreal, it is enough if the jury believe it appeared to be real to the slayer at the time he does the killing. Now if from the defendant's standpoint, as has been shown to the jury by the testimony taking into consideration all the facts and circumstances in evidence, the jury believe it reasonably appeared to the defendant at the time he did the killing, if he did so, that he was in danger of death or serious bodily injury from the deceased, then he had the right to defend himself from such danger or apparent danger and if it was necessary to kill deceased. And the jury must put themselves in the defendant's place and determine from all the facts and circumstances in evidence, as they appeared to defendant at the time, whether his expectation or apprehension of danger of death, or serious bodily injury, from deceased was reasonable, and if the jury believe that it was, then they must find defendant 'not guilty.' You are further charged that when a defendant accused of murder is on trial seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide, the person killed, by some act then done, or words coupled with the act, manifested an intention to execute the threats so made. Now if you believe from the evidence that Hamilton Jones had made threats against the life of John Jones, the defendant, or to do him some serious bodily injury and that at the time of the killing, the said Hamilton Jones by some acts then done or words spoken coupled with his acts, manifested an intention to execute the threats so made, or the said Hamilton Jones had done some act or spoken some words which coupled with his acts were reasonably calculated to induce the defendant to believe that the said Hamilton Jones deceased intended then and there to carry out the threats so made, then in that event the defendant John Jones would be justified in taking the life of the deceased, Hamilton Jones, and you will find the defendant not guilty and so say by your verdict. And in this connection you are further instructed that it does not matter that the defendant John Jones was in no real danger, but if it reasonably appeared to him that he was in danger at the time of the killing as herein explained, then he would be justified."

*W. M. Holland,* for appellant. After a jury has been selected, sworn and empaneled to try a felony case, it is positively prohibited from separating, unless by permission of the court with the consent of the State's counsel and the defendant, and then only in charge of an officer; and a separation of a jury by and with the

permission of the court, without the consent of the defendant, or his counsel, after same has been sworn and empaneled, is positively prohibited by the Code of Criminal Procedure, even though they be in charge of an officer; and where there is a separation of the jury by permission of the court to which the defendant then and there excepts, the judgment should be reversed without reference to the injury, or no injury, to the defendant. Art. 725, White's Annotated Code of Criminal Procedure. Grissom v. State, 4 Texas Crim.. App., 374; Warren v. State, 9 Texas Crim. App., 619; Defriend v. State, 22 Texas Crim. App., 570; Boyett v. State, 26 Texas Crim. App., 689; Kelly v. State, 28 Texas Crim. App., 120; Robinson v. State, 30 Texas Crim. App., 459; McCampbell v. State, 37 Texas Crim. Rep., 607; Darter v. State, 44 S. W. Rep., 850; Albers v. San Antonio & A. P. Ry. Co., 81 S. W. Rep., 828.

On the proposition of the argument of State's counsel: Franklin v. State, 51 S. W. Rep., 951.

After a jury has been sworn and empaneled to try a case of felony it is the duty of the sheriff and the court to hold them together and to keep them separated from all other citizens and to provide a suitable room for the deliberation of the jury and all· necessary food and lodging and permit no person to be with the jury while they are deliberating or have the case under advisement, or permit any person to converse with any juror after he has been empaneled, except in the presence of the court, and by permission of the court. Defriend v. State, 22 Texas Crim. App., 570; Wright v. State, 17 Texas Crim. App., 152; Albers v. San Antonio & Aransas Pass R. R. Co., 81 S. W. Rep., 828; Gulf Colorado & Santa Fe R. R. Co. v. Matthews, 66 S. W. Rep., 588.

*Howard Martin,* Assistant Attorney-General, for the State. These facts do not constitute such a separation of the jury as will cause a reversal. Taylor v. State, 38 Texas Crim. Rep., 552; Walker v. State, 51 S. W. Rep., 234. In this connection it will be observed that appellant in his motion for new trial alleges that the jury after they had received the charge of the court separated; that two citizens who were not on the jury mixed and mingled with the jurors. The court heard evidence on this issue and decided adversely to appellant. Lamar v. State, 39 S. W. Rep., 677.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of seven years; hence this appeal.

Appellant raised the question of the separation of the jury and presents a number of assignments on that subject. The record shows that, after the jury had been empaneled and were engaged in hearing the evidence, five of said jurors desired to leave the court room and go to the closet, which was situated in the court-house yard, for the purpose

of answering a call of nature. They were permitted by the court to retire in charge of deputy sheriff. The other seven remained in the jury-box in the presence of the court and officers of the court. The five were absent some ten minutes. No objection was made by appellant or his counsel to the retirement of a part of the jury, leaving the others in the court room, until after they had retired, and then appellant's counsel took a bill of exceptions. The next bill shows that while the jury were engaged in trying the case, and after a part of the evidence had been introduced, four of said jurors desired to retire to the closet, and they were placed in charge of an officer and allowed to retire. The other eight remained in the court room, in the jury-box, in the presence of the court and officers of the court. These four were absent some ten minutes. No exception was taken to these jurors retiring until after they had retired. Whereupon appellant took a bill of exceptions. After this, a portion of the jury desired to retire from the court-room to the closets in the yard, and were permitted to do so in charge of a deputy sheriff. The remainder of the jury remained in the jury-box in open court, in the presence of the court and the officers, until the others returned. Those retiring were gone fifteen or twenty minutes. All of said bills show that appellant did not consent to the retirement of a part of the jury as is shown above. The last bill does not show, in the court's explanation when the bill of exceptions was taken, whether before or after the retirement of the jury. Appellant invokes article 725 Code Crim. Proc., which says, "After the jury has been sworn and empaneled to try any case of felony, they shall not be permitted to separate, until they have returned a verdict, unless by permission of the court, with the consent of the attorneys representing the State and the defendant, and in charge of an officer." He insists that every portion of said article has equal obligation upon the court, and that in the absence of the consent of the defendant, or his attorney, it was not competent for the court to permit a part of the jury to retire, even though in custody of a deputy sheriff. In support of his contention, he cites a number of authorities. Among them Defriend v. State, 22 Texas Crim. App., 570; Boyett v. State, 26 Texas Crim. App., 689; McCampbell v. State, 37 Texas Crim. Rep. App., 607; Darter v. State, 44 S. W. Rep., 850. In none of the cases cited, was the exact question here presented before the court. We apprehend, that the object of the statute was to prevent the possibility of the jury or any portion thereof being tampered with. A number of cases hold, that if an opportunity is presented, so that the jury, or any portion of them, might be approached or tampered with, the verdict will be set aside, without reference to any injury shown. Here it appears that the jurors retiring, as well as those remaining in the court-room, were under the continuous surveillance of officers, and it is shown that any opportunity was afforded to any outsider to approach or speak with any member of the jury. While we do not believe under such circumstances that the consent of the attorney for the State or the defendant was necessary, in order to

permit what was done (this not being such separation as is contemplated under said statute. Walker v. State, 51 S. W. Rep., 234) yet, we believe the better practice would have been for the court to request such consent; especially, after the first bill of exceptions had been taken to a portion of the jury retiring.

There is another bill of exceptions to the action of the juror, Walter Nance. It appears from the bill, that while the trial was in progress, the court ordered some benches brought into the court-room from the room just behind the jury-box. The sheriff and others went in said room for the purpose; and Nance, one of the jurors who was sitting next to the door leading into said room, stepped in the room and assisted in bringing out one bench, but was not out of sight of the court in that room for five seconds, immediately returning, bringing the bench. It does not occur to us that this was a separation of the juror. It might be said that he was in the presence of the court. Certainly to go into a room to help the sheriff and others bring in the bench, and absent not more than five seconds, could not be considered such a separation as the law will notice.

In motion for new trial, appellant complains of the misconduct of the jury after they had retired to their room, and had the case under advisement; that the deputy sheriff retired from the room where the jurors were sleeping at night with two of the jurors, and these remained separate and apart from the other portion of the jury, who were left in the court-room, for a considerable space of time. The proof on this point shows that the two jurors were taken by the deputy sheriff to the closet to answer a call of nature; that on their request the deputy sheriff went with them to an ice-cream parlor and together they partook of ice-cream, and then returned to the jury-room, being absent some half an hour. In the meantime the other members of the jury remained in the court-room in charge of the sheriff. It is further shown, that these absent jurors in charge of the deputy sheriff did not talk with any one during their absence. It occurs to us, that the same principle heretofore announced in reference to the other bills of exception, is applicable to this bill. There was in effect no such separation as would authorize a reversal. All the while the jurors were in custody of an officer. See Walker v. State, 51 S. W. Rep., 234.

Appellant further insists that others were permitted to mix with the jury at night during their retirement. The facts show that two persons, to wit: J. J. Harris and J. M. McGee, who were on the jury for the week, but not on the jury trying the case, were permitted by the court to sleep in the court-room, where the jury was also kept during the night. An examination of the evidence on this subject shows that the two jurors occupied the middle aisle of the court-room, and were kept separate from the jury trying the case. We do not deem this reversible error, as neither of said jurors are shown to have spoken to members of the jury, but they were kept away from and aloof from the jury. Of course, we do not by any means commend this loose prac-

tice with regard to the custody of a jury trying a felony case. The object of the law is to keep them together and to keep others away from them. Doubtless in many of our counties where accommodations and conveniences for taking care of the jury are meager during a protracted trial, it may often be difficult to keep the jury at all times together. This case is illustrative of this. Here some of the jury desired to answer calls of nature, when others did not. While strictly the letter of the law might require that all go together on such occasions, yet we can see no possible harm where some remain in the courthouse under the immediate supervision of the court and officers, and others go out on such occasions, accompanied by an officer under the direction of the court. In such cases, in the absence of some opportunity shown by which the jury, or members thereof, might have been approached and tampered therewith, we would not feel authorized to set aside a verdict.

Appellant complains of certain remarks of the prosecuting attorney, during the closing argument of the case. Among other things he complains that said attorney, during his argument, walked up within a few feet of defendant, and shaking his finger in his face, said: "You, John Jones, defendant here on trial, know that you have locked up in the deep recesses of your heart facts if you would divulge would convict you and hang you in this case. You know it. You know they are there, and why didn't you tell it to the jury? Because you know it would hang you." These remarks were objected to because they were outside the record, and calculated to prejudice appellant. The court explains this by stating, that when appellant was on the stand as a witness, when the State undertook to cross-examine him, he refused to tell where he got the gun with which he killed deceased; and the remarks were made with reference to that matter. Besides no written or oral application was made by appellant to instruct the jury to disregard said remarks. We think this explanation disposes of said bill of exceptions. The same observation may be made with reference to other bills of exception taken to the language of the district attorney in his closing argument.

Appellant offered the following testimony, by the witness P. M. Bowie, to wit: That the defendant John Jones on the morning before the killing at noon, told Mr. Bowie (owner of the plantation and store where the homicide occurred and where defendant resided) that he had heard Hamilton Jones was looking for him with a gun, and had been told by two or three parties that they heard Hamilton Jones say he was going to kill him, and asked Mr. Bowie what he must do about it. Mr. Bowie told him, 'I don't know, John, if he is after you with a gun, you will have to protect yourself, that is the best I can tell you." Defendant offered to prove said facts by himself and by the witness P. M. Bowie. But the State objected to the admission of said proposed testimony on the ground that it was self-serving—not part of the res gestæ; and the court sustained said objections, excluding said testimony. The

object and purpose of the introduction of said testimony is not disclosed in the bill. What particular light it would shed upon the homicide we are therefore not informed; and it occurs to us, as it did to the court below, that the declarations and conversation between Bowie and defendant anterior to the homicide, constituted no part of the res gestæ and were self-serving in their nature. The court did not err in excluding the same.

By another bill of exceptions it is shown that, in the argument to the jury, the attorney for the State commented upon the failure by the defendant to establish by Bowie (owner of the plantation where the homicide occurred), the custom of said plantation as to the carrying of fire-arms thereon, the court having sustained objections to the introduction of such testimony. What the custom was we are not informed by the bill, nor is there any bill taken to the exclusion of any testimony referred to in the bill under discussion. So we are unable to say what the comments were, not knowing what the custom was. Moreover no request was made to instruct the jury to disregard such argument.

Appellant criticises the court's charge on self-defense. We have examined the same, and think it properly presents that issue. Nor did the court err in refusing to give appellant's special requested instructions.

We have examined the record carefully, and in our opinion it contains no error authorizing a reversal. The judgment is affirmed.

*Affirmed.*