Ira McKee v. The State.

No. 13998.   Delivered April 29, 1931.
Rehearing Denied October 7, 1931.

The opinion states the case.

*Spring, Haynie & Laurence,* of Austin, for appellant.

*T. L. Price,* District Attorney, of Tahoka, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

Appellant killed W. R. Billingsley by shooting him with a pistol. Accompanied by Mrs. Emma Mayhall and her daughter, appellant left Breckenridge for the purpose of going to an oil field in New Mexico. Reaching the town of Sparenburg, appellant stopped his car, got out and left the engine running. He told Mrs. Mayhall to remain in the car until he returned. Carrying two pistols with him, appellant went into the place of business of Mrs. Mary Bryce, a widow, exhibited a pistol and attempted to rob Mrs. Bryce. Mrs. Bryce had a crippled son, who was lying on a cot. Appellant commenced kicking the son and demanded that he tell him where the money was. Mrs. Bryce demurred, saying to appellant: "I am a widow woman and that is all I have." Appellant replied: "I don't care a damn if you are; I am a widowed man too and I am going to get the money." Appellant continued his abuse of the crippled boy and threatened to kill Mrs. Bryce. Going to the cash drawer, he took what money he could find. In an effort to protect Mrs. Bryce and prevent the robbery, deceased armed himself with a shotgun and rushed to the scene. He was in the act of opening the screen door when appellant saw him and shot him in the shoulder. Running toward the door, appellant fired a second shot at deceased, and hit him again. As he passed deceased, deceased struck him over the head with his shotgun, inflicting a wound. At this point deceased slipped and fell. After he was down appellant fired two shots into his body. On firing the last

shot, appellant said to deceased: "I do not guess you think I am joking now." Deceased said to appellant that he had killed him and that it was "a cowardly trick to rob a widow woman." Appellant replied: "Well, you will let me alone after this." Deceased said: "Yes, oh God, yes, you have done killed me." Deceased died a short time after the last shot was fired into his body.

The foregoing is the substance of the testimony coming from state's witnesses. Appellant did not testify in his own behalf, but presented witnesses who testified that, in their opinion, appellant was insane. The state met the issue with the testimony of several witnesses who, after qualifying, expressed the opinion that appellant was sane. The issue of insanity was submitted in the charge of the court.

The objection to the court's charge on the ground that it failed to embrace an instruction covering the law of self-defense was not well taken. The issue was not raised. At the time deceased armed himself and approached the scene of the homicide, appellant was engaged in committing the offense of robbery. When deceased struck appellant with his shotgun, appellant was in the presence of the person he was robbing. Deceased had the legal right to kill appellant in preventing the robbery. By his own conduct appellant forfeited his right of self-defense. Under our statute a killing is justifiable when it takes place in preventing a robbery if done while the robber is in the presence of the one robbed or is fleeing with the property taken by him. Article 1222, subd. 5, P. C.; Brown v. State, 87 Texas Crim. Rep., 261, 222 S. W., 252; 30 Corpus Juris, p. 49. Under the facts reflected by this record, it would be a strange doctrine that would accord to the accused the right of self-defense.

By affidavits filed in this court six months after the trial, appellant seeks to invoke the provisions of article 1, section 10 of the Constitution of Texas, securing to the accused the right of being heard by counsel. These affidavits attack the right of counsel of appellant's own choosing to practice law in this state, it being averred that the disqualification was unknown to appellant until long after the trial. Another attorney aided counsel chosen by appellant, and actively participated in the trial. We would not be warranted in considering the affidavits. The questions they seek to present are not related to the exercise of the jurisdiction of this court. Article 5, section 5 of the Constitution of Texas provides that the Court of Criminal Appeals shall have power upon affidavit or otherwise to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction. Save affidavits raising questions affecting the exercise of the jurisdiction of this court, ordinarily we will not consider ex parte affidavits setting up matters not shown by the record. Texas Jurisprudence, vol. 4, p. 179; Williams v. State, 104 Texas Crim Rep., 378, 13 S. W. (2d) 112. There are exceptions, but they have no application here and will not be discussed.

Bills of exception 3 to 5, inclusive, present the following occurrence: State's witnesses Mrs. Mary Bryce, Jack Bryce and Mrs. W. R. Billingsley, wife of deceased, had gone to the jail with the sheriff prior to the trial for the purpose of listening to appellant's voice. They took hidden positions while the sheriff engaged appellant in conversation. The sheriff testified on his direct examination by the state that appellant voluntarily engaged in conversation with him during the time the parties were in the jail. On cross-examination he stated that he purposely made appellant talk out loud in order that the witnesses might hear his voice. On redirect examination he explained the expression "I made him talk out loud" by saying that he did not make the appellant talk, but merely engaged in conversation with him. On the trial Mrs. Billingsley testified without objection that she heard appellant talk while she was in the jail, and that the voice was that of the person who shot her husband, she having on the night of the homicide heard the voice of her husband's assailant. After this testimony had been received without objection, Mrs. Bryce, who had also been present when deceased was killed, gave substantially the same testimony. The objection interposed to the testimony of Mrs. Bryce was that it was hearsay, a conclusion, and contrary to the provisions of article 727, C. C. P., relating to confessions while in custody. The same objection was interposed to the testimony of Jack Bryce and that of the sheriff touching their visit to the jail and the arrangement whereby appellant's voice was heard by the witnesses. No words spoken by appellant, and nothing said by him while in jail, went to the jury. The witnesses merely said that they heard appellant talk and recognized the voice as being the same as that they had heard on the night of the homicide.

A similar situation was presented in Briscoe v. State, 106 Texas Crim. Rep., 402, 292 S. W., 893. In holding that the procedure under consideration did not offend against the provisions of article 727, C. C. P., Judge Hawkins, speaking for the court, used language as follows: "However, giving the most liberal construction to the bill, if the purpose of the motion was to strike out that portion of the testimony of Fox which related to his statement that he identified appellant immediately upon hearing his voice while in jail, then we are of the opinion still the bill does not present error. The objections were that appellant was in jail at the time; that no statement he made while in jail could be used in evidence against him; and that he had not been warned and his statement reduced to writing. The effort here is to extend the provisions of article 727, C. C. P., 1925, to exclude the evidence complained of. As heretofore stated, there was no effort made to introduce in evidence anything appellant said, nor his manner while saying it; the witness only testifying to hearing his voice, and his identification thereby. It certainly would not transcend said article 727 for a witness to testify that he had

observed a certain party while in jail, and identified him at the time of this observation; the testimony being otherwise admissible. To hold as here contended for by appellant would be to extend the rule involved beyond reasonable limits. Of course, if appellant had refused to talk, this incident could not have been proven against him, because it would have been an act of appellant while under arrest which might be regarded by the jury as significant and of a criminative character. It has been held permissible to prove that, after arrest, the shoes were taken off accused's feet, and placed in tracks for the purpose of comparison or identification. Walker v. State, 7 Texas App., 264, 32 Am. Reps., 595; Guerrero v. State, 46 Texas Crim. Rep., 447, 80 S. W., 1001; Pitts v. State, 60 Texas Crim. Rep., 527, 132 S. W., 802. The principle there involved seems similar to hearing accused's voice while in jail."

In Barnes v. State, 106 Texas Crim. Rep., 394, 292 S. W., 548, a witness was permitted to testify, over objection, that he heard appellant talk while he was in custody in the police station, and identified him by his voice. In an opinion by Judge Lattimore this court held that the fact that the witness testified that he had heard the accused talk while under arrest and recognized his voice, and that he identified him by his voice was admissible. These holdings are adverse to appellant's contention. We are therefore constrained to hold that his objections were not well taken.

Bill of exception No. 7 relates to the action of the trial court in permitting Mrs. Emma Mayhall to take the witness stand on behalf of the state, the objection being that she was incompetent because she was under indictment charging her with the identical offense for which appellant had been placed upon trial. The fact that the witness was an accomplice as a matter of law did not preclude the use of her testimony by the state. McGinsey v. State, 65 Texas Crim. Rep., 362, 144 S. W., 268.

Bill of exception No. 8 recites that state's witness Ida Mayhall after having testified on direct and cross-examination, had been excused; that thereafter the witness was recalled by the state, and, over appellant's objection, required to testify that she did the things appellant told her to do because she was afraid of appellant. The pertinent objection was that the state was attempting to bolster up the testimony of the witness by eliciting from her a self-serving declaration. The court qualifies the bill of exception with the statement that the original question objected to was withdrawn by the district attorney, and, in lieu thereof, the witness was asked why she did the things appellant told her to do. The qualification further states that the testimony was admitted on the question of "the witness being an accomplice, which question was submitted to the jury in the court's charge." We are unable to determine from the bill of exception whether the testimony, if objectionable, could have harmed appellant. The bill fails to show what testimony the witness had given. It is silent

as to the "things appellant had told her to do." If the statement of facts should be consulted we find that the witness had testified, without objection, that appellant had exhibited a pistol and threatened to kill the mother of the witness if she did not accompany him on his trip. Mrs. Emma Mayhall, the mother of the witness, also testified, without objection, to substantially the same facts, that is, that appellant had threatened to kill her, and had exhibited a pistol at the time he required her and Ida Mayhall to accompany him on the trip. On cross-examination of Ida Mayhall, before the state had ever asked her whether she was afraid of appellant, appellant elicited from the witness the following statement: "I did not tell those people that I was afraid of Ira McKee and that my name was not Ida Williams, because he said if I did tell it he would kill me. I was afraid to tell it and I did not want to leave my mother." See statement of facts, page 42. If the testimony of which complaint is made was improperly received,—and this is not conceded,—substantially the same facts were proved by appellant himself. Hence the rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by other and proper testimony, or by evidence which was not objected to, has application. Anderson v. State, 110 Texas Crim. Rep., 241, 8 S. W. (2d) 124.

According to the recitals in bill of exception No. 9, Dr. J. C. Loveless, a regularly licensed physician, and qualified to give expert testimony, had been called as a witness for the state. Upon cross-examination appellant propounded to the witness a hypothetical question for the purpose of eliciting from him an opinion as to whether appellant was of abnormal mind. The state objected to the question and the court sustained the objection. The qualification appended to the bill recites that the court stated he would sustain the objection for the time being, and that later, when Dr. Loveless was recalled to the stand, the court advised appellant's counsel that he would permit the witness to answer the question set out in the bill of exception. It is further recited in the qualification that appellant's counsel advised the court that he did not desire to ask the question. As qualified, the bill fails to manifest error.

Bill of exception No. 10 embraces a statement to the effect that Mrs. Billingsley, widow of deceased, was permitted, over appellant's objection, to testify that her husband stated at the time he died that he had lived a clean life and was not afraid to meet his Maker; that he was sorry to leave his wife and little boy; that he wanted his widow and child taken care of. The objection shown in the bill was that the statement of deceased was not a dying declaration, was hearsay and calculated to arouse prejudice in the minds of the jury, in that it was wholly unrelated to the immediate facts surrounding the homicide. The qualification appended to the bill shows that a sufficient predicate had been laid for eliciting any proper declaration the deceased might have made as to the relevant facts

and circumstances *immediately surrounding the homicide.* The qualification further shows that the statement set out in the bill of exception was made by deceased during the time he was describing the acts of appellant in shooting him. The court expressly states in the qualification that appellant objected to the entire statement on the ground that a proper predicate had not been laid for introducing the dying declaration, but that he did not object to the statement set out in the bill of exception and made no request that it be withdrawn from the consideration of the jury.

·As a general rule this court will consider only questions which were before the trial court and which are brought up for review in the manner provided by statute. Texas Jurisprudence, vol. 4, page 41; Edwards v. State, 91 Texas Crim. Rep., 196, 237 S. W., 933. We are in no position to pass on questions on which the trial court did not act. Robinson v. State, 110 Texas Crim. Rep., 345, 7 S. W. (2d) 571. While the Court of Criminal Appeals has always been liberal in dealing with a record where the death penalty was inflicted, we cannot consider a matter such as is here complained of for the first time on appeal. Fisher v. State, 108 Texas Crim. Rep., 623, 2 S. W. (2d) 249.

Bill of exception No. 11, as qualified by the court, shows that the testimony therein set forth was not admitted.

Bills 12 and 13 bring forward objections to the testimony of two witnesses, who expressed the opinion that appellant was sane. It is shown by the qualification appended to the bills that each of the witnesses testified that they had known appellant, had seen him and talked to him on several occasions, and had closely observed his acts and conduct. They further testified before being permitted to express an opinion as to appellant's sanity, that based upon their observation of appellant and their association with him, they had not noticed anything out of the ordinary in his conduct. It is well settled that a non-expert witness, who has shown reasonable opportunity to observe the acts and conduct of the party inquired of, may state that he has never observed anything in the acts, speech, demeanor, or conduct of such party which was peculiar, or which led witness to believe or conclude such party of unsound mind, or abnormal. Upton v. State, 20 S. W. (2d) 794, and authorities cited. We quote the language of Judge Lattimore in Shields v. State, 104 Texas Crim. Rep., 253, 283 S. W., 844, 846, as follows: "We further observe that we are unable to draw the fine distinction between the weight, effect, and admissibility of a statement by one who shows himself to have seen, associated, and been with another enough to enable the witness to say that he has never seen or heard anything in the words, looks, or acts of such other to indicate that he is of unsound mind or abnormal, on the one hand, and the same statement in other words, viz: that from the length of such association and opportunity for such observation, even

though he cannot remember details, he is of opinion that the party is of sound mind."

Giving effect to the announcement of the decisions, we think the bills of exception show that the witnesses were qualified to express the opinion that appellant was sane.

Bills of exception 14 to 21, inclusive, bring forward extended arguments which it is alleged were made by state's counsel in addressing the jury. The court qualifies the bills with the statement that no objections were interposed at the time the arguments were made, and that no request that the remarks be withdrawn from the jury was presented to the trial judge. It is expressly stated in the qualifications that the matter was not brought to the attention of the court until the motion for new trial was presened, save that at some time during the argument appellant's counsel whispered to the court that he was going to except to some of the remarks for the state. The court stated to appellant's counsel at the time to make known his objections, but counsel remained silent. This court has committed itself to the proposition that ordinarily objections to the argument must be made at the time it occurred in order that the attorney making the argument may, if he sees fit, withdraw or explain it. In Sears v. State, 106 Texas Crim. Rep., 219, 291 S. W., 547, we said: "Unless objection to argument is called to the court's attention at the time the objectionable statements are made, they cannot ordinarily be taken advantage of by later complaints.

We quote from Harris v. State, 93 Texas Crim. Rep., 544, 249 S. W., 485, as follows: "It is conceived that the orderly procedure which must characterize a trial demands that the complaint that in his argument counsel is transcending legitimate bounds should be addressed to the trial judge at the time, so that he may determine its propriety and use his authority to counteract any injustice that may portend. It is fair that the counsel should be accorded occasion to himself withdraw any inaccurate or objectionable feature of his remarks to the jury. When the opposing counsel sits silent, he waives any argument of his adversary that can, in consonance with orderly administration of justice, be waived."

In the remarks brought forward in the bills of exception we find nothing calling for action on the part of the court in the absence of objection.

In bill of exception No. 22 complaint is made of the action of the trial court in refusing to grant a new trial on the ground that one of the jurors was prejudiced. It was alleged in the motion that the juror Hull had stated to one John Earl before going on the jury that he had formed an opinion in the case; that he knew that appellant had been sentenced more than one time to the penitentiary; that he believed the best way to deal with such criminals was just to kill them. Mr. Earl would not testify that he heard the juror make the statement in question.

Hull testified that he did not make the statement; that he did not know appellant; that he had never heard the case talked or discussed and that he had no opinion whatever when he went on the jury as to appellant's guilt or innocence. In Branch's Annotated Texas Penal Code, sec. 565, p. 288, we find the following statement: "When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant the decision of the trial court on the issue will be sustained by the appellate court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge."

See Meadors v. State, 101 Texas Crim. Rep., 336, 275 S. W., 829, and McKenzie v. State, 11 S. W. (2d) 172.

The trial court was warranted in concluding that the juror was not prejudiced.

We have carefully considered every contention made by appellant and fail to find reversible error.

The judgment is affirmed.                                    *Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Annulment of the judgment is sought upon the proposition that the selection of the members of the grand jury which found the indictment against the appellant was illegal in that the grand jury was selected by five jury commissioners. In the Act of the Legislature of 1876, it was declared that the district judge shall, at each term, appoint three persons to perform the duties of jury commissioners. It was also declared that the jury commissioners shall select sixteen men from whom the members of the grand jury shall be selected. See R. S., 1879, art. 3017. The article mentioned has been carried into the civil statutes through several revisions, including that of 1925. See R. S., 1925, art. 2104. By chapter 37, Acts of the 41st Legislature (1929), Reg. Sess. (Vernon's Ann. Civ. St., art. 2104 note), the statute was amended so as to declare that there should be appointed not less than three nor more than five jury commissioners. The provisions of the Act of 1876 were, by the codifiers, carried into the Code of Criminal Procedure, 1925, in arts. 333 and 338.

The grand jury was selected before the offense was committed. At the time of the indictment the appellant was in jail charged with an offense. He was privileged to object to trial upon the indictment found and to move the trial court to set the indictment aside and to have adverse action on the trial passed upon by the appellant court. See Davis

v. State, 105 Texas Crim. Rep., 359, 288 S. W., 456. By failing to oppose his trial upon the indictment and to bring up a record showing the action of the court thereon, he waived any irregularity in the indictment which the law would permit to be waived. See Gentry v. State, 105 Texas Crim. Rep., 617, 290 S. W., 541. That is to say, unless the formation of the grand jury was void, its action in finding the indictment is not subject to attack in any proceeding such as the present. See Ex parte Clemmings, 90 Texas Crim. Rep., 261; Bryant v. State, 97 Texas Crim. Rep., 11; King v. State, 90 Texas Crim. Rep., 289; Russell v. State, 92 Texas Crim. Rep., 93; Buchanan v. State, 107 Texas Crim. Rep., 559. The statutes governing the subject and the judicial announcements are many and uniform to the point stated. They will be found reviewed and collated in the opinion of this court in the case of Powell v. State, 99 Texas Crim. Rep., 276, 269 S. W., 443. We are not to be understood as intimating that if the attack upon the indictment had been made at the proper time and preserved in the record it should have been sustained. It is not clear that there is real conflict in the provisions of the statute touching the jury commission, or that if there be conflict, that the selection of the grand jury by a commission composed of five men, as provided by chapter 37, supra, would constitute more than an irregularity which might be waived.

Many months after the trial and after the record had reached this court, the appellant, for the first time, attacked the validity of his conviction upon the ground that upon his trial he was not represented by an attorney. Such matter is not upon any recital in the record of the trial court but it is upon his affidavit that the appellant relies. From the record it appears that the appellant was represented upon his trial by two attorneys, namely, H. P. Shead and J. P. Willis. In his affidavit it is claimed that he employed Shead but did not employ Willis. It is also stated in the affidavit, accompanied by a certificate from the clerk of the district court of Tarrant County, that by a judgment of that court Shead's privilege of practicing law in the courts of the state had been suspended. That fact was unknown to the appellant at the time of his trial. Counter-affidavits were filed showing that the judge who presided at the trial was not aware of the suspension; also that before the judge was aware that the appellant had employed attorneys, the court offered to appoint an attorney to represent the appellant but the appellant declined, stating that he had already employed an attorney.

In article 1, section 10, of the Const of Texas, it is said: "In all criminal prosecutions the accused * * * shall have the right of being heard by himself or counsel, or both."

In article 494, C. C. P., 1925, it is said: "When the accused is brought into court for the purpose of being arraigned, if it appear that

he has no counsel and is too poor to employ counsel, the court shall appoint one or more practicing attorneys to defend him."

In article 11, C. C. P., 1925, it is said: "The defendant in a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury in a felony case."

Except in rare cases involving its jurisdiction, the authority of the Court of Criminal Appeals is controlled by the record made in the trial court and presented on appeal, and cannot consider attacks upon the procedure presented by affidavit in the appellate court. See Const. of Texas, art. 5, sec. 5; also Vance v. State, 34 Texas Crim. Rep., 395; Craddock v. State, 15 Texas App., 641. It may be said, however, that if the court were authorized to consider the affidavits mentioned, the matter therein would be far from conclusive against the judgment. The decisions of this court and others are to the effect that the accused in a capital case may waive the appointment of counsel. See Compton v. State, 67 Texas Crim. Rep., 15; James v. State, 196 Pac., 1045; Ruling Case Law, vol. 8, p. 84, sec. 40. See also Corpus Juris, vol. 16, p. 821, sec. 2077, note 23 and cases collated.

In this state the obligation to appoint counsel is predicated upon the showing that the accused was too poor to employ counsel, a condition which, in the present instance, is negatived by the fact, as shown by the affidavit, that the appellant did employ counsel, though he claims as to one of those who represented him he made the mistake of employing one whose license to practice law in Texas had been suspended. Touching the other by whom he was represented, he presents no impeachment; nor is it contended that his defenses were not properly presented, or that in the conduct of his case there was either misbeheavior, neglect or incompetency upon the part of those by whom he was represented.

Counsel representing the appellant upon this appeal have been zealous and energetic, and have presented brief and argument showing research and thought. In the light of the brief, motion and argument, the entire record has been reviewed. We are confirmed in the opinion that the announcements made in the original opinion are sound and that the matters urged in the motion for rehearing and discussed in the present opinion are not such as to require or authorize a reversal of the judgment of conviction.

The motion is overruled.

*Overruled.*

ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—The views of this court regarding when a second motion for rehearing should be considered were expressed in Hickman v. State, 93 Texas Crim. Rep., 407, 247 S. W., 518; and in Calley v. State, 103 Texas Crim. Rep., 53, 279 S. W., 848.

The motion here sought to be presented is not thought to be within contemplation of the authorities cited. The points discussed upon consideration of the motion for rehearing are only re-urged in the second motion and the conclusion heretofore announced is not thought to be erroneous.

The request for leave to file second motion for rehearing is denied.

*Denied.*