ANNA BELL TURNER V. THE STATE.

No. 23094. Delivered April 4, 1945.
Rehearing Denied June 20, 1945.

492

The opinion states the case.

*Irwin & Irwin,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault with intent to murder with malice upon Dora Turner, and by the jury assessed a penalty of fourteen years in the penitentiary.

The facts reflect the night life of a city in various places of amusement. Appellant seems at one time to have been the wife of one Homer Medford, and Dora Turner was the third person in this triangle, the testimony evidencing the fact that Dora Turner was infatuated with Medford, even going to the extent of living with him for some time in a tourist camp, so the witnesses said, and having had Medford's initials tattooed on her arm some three weeks prior to this trial. On the night of the assault complained of, on August 11, 1944, appellant appeared in the Plaza Hotel Cafe in Dallas, a place crowded with people, and some one said "Watch out Dora," and when the complaining witness turned around she saw appellant with a pistol pointed towards her; the pistol was fired, and Dora Turner fell in a faint, the pistol ball passing through her hair but not striking the body or neck of Dora Turner. Upon being apprehended, as she stood in the cafe soon after the firing of the shot, appellant said: "Is the son-of-a-bitch dead? If not, I will finish her," and she pointed the pistol at the arresting officer, who stood still, and appellant left the cafe. The officer, in company with another officer, soon apprehended her and disarmed her. There was no denial of these facts by anyone.

Bill of exceptions No. 1 relates to the refusal of the trial court to quash the indictment herein because it is claimed there was an unwarranted and illegal participation of the judge impaneling the grand jury in the manner of the selection of the twelfth grand juror of the panel that returned the indictment against appellant. The statute relative to a challenge of the formation or personnel of a grand jury, requiring that such challenge shall be made prior to the impaneling of such jury, has of necessity been enlarged upon to the extent of allowing such a challenge in the form of a motion to quash the indictment

found by such a grand jury where the offense therein charged is alleged to have taken place after such jury had been impaneled. See Powell v. State, 99 Tex. Cr. R. 276, 269 S. W. 443; Davis v. State, 288 S. W. 456.

The contention herein is that the judge impaneling the grand jury interfered with the free exercise of discretion upon the part of the deputy sheriff in summoning talesmen in order to fill out the panel of twelve grand jurors, it being shown that upon a call of the grand jurors selected by the grand jury commissioners only twelve such jurors appeared, and one of them offered a valid excuse, and was excused from service thereon, whereupon the judge directed a deputy sheriff to summon talesmen for the purpose of filling the quota of twelve for a grand jury. We think it can safely be said that the judge administered a proper oath to such deputy sheriff who then proceeded to phone first one Charlie Steele, and being unable to make contact with said Steele, he then phoned to one P. A. Bailey, who soon appeared in court, was properly summoned and accepted by the court and became the twelfth member of the grand jury thus impaneled.

The contention herein being that the selection of Mr. Bailey as a talesman was not the act of the deputy sheriff, but that such selection was made by the judge. The district judge thus complained of was Judge Claude McCallum, who had departed this life at the time of this trial, and we do not have the benefit of his testimony as to what took place on the occasion in question, although the deputy sheriff who summoned the juror testified fully relative thereto, and his testimony doubtless had great weight with the trial court in his decision in this matter. The matter at issue in this motion being whether the deputy sheriff acted upon his own initiative, or whether Judge McCallum ordered the summoning of Mr. Bailey as the twelfth grand juror. We find the record with evidence upon both sides of this controversy; but do find many statements therein that support the conclusion arrived at by the judge trying the case, that the selection of Mr. Bailey as a talesman was the act of the bailiff and not the act of the judge. We quote excerpts from the bailiff, Morgan Riddle's testimony:

"When he (Judge McCallum) first mentioned it to me, yes, the judge instructed me to go and summon a talesman without regard to who he was or where he lived. * * * Yes, sir, I exercised my discretion in selecting him (Mr. Bailey), that is right. * * * I was trying to obey the orders of the court and go out and select a man to finish up the panel, and I did so, and Mr.

Bailey, whom I then summoned, was a man of my choice. I selected him acting upon my own discretion and judgment, and not at the dictates of the judge or anyone else."

There is other testimony in the record corroborative of the above statement, and also testimony to the contrary therein; but as we see the matter, it appears to us that there is ample testimony present upon which the trial judge could say that on this disputed question of fact he found that the selection of Mr. Bailey as a talesman was the act of Deputy Sheriff Riddle, uninfluenced by any act upon the part of Judge McCallum. Had this matter been presented to a jury upon a required finding of fact, and, under the facts presented, it had found the act to have been that of the bailiff, supported as it is by the present testimony, we would not feel justified in setting such finding aside; neither do we now find ourselves justified in setting aside the finding of Judge Henry King, the trial judge, based as it is upon conflicting testimony.

The case of Davis v. State, 288 S. W. 456, relied upon by appellant, is not in point. The facts therein show that the district judge took the list selected by the grand jury commissioners, before same had been sealed up and delivered to the clerk, and arbitrarily struck off four names thereon who had been selected as grand jurors, and directed the commissioners to select four other persons to take the place of the four stricken by the judge. This action was prohibited by statute, see Art. 337, C.C.P., as well as an unwarranted intrusion upon the part of the judge, and was clearly error, but we find no such facts presented herein. The motion to quash was properly overruled.

In bill of exceptions No. 2 complaint is made that while the prosecuting witness, Dora Turner, was on the stand, she was being questioned relative to her feelings towards one Homer Medford, the one-time husband of appellant, whose initials "H.C.M." the witness had caused to be tattooed upon her shoulder, and the witness said that she had a sister in the hospital, and that said Medford was also in this hospital, and she would also go to see him when at the hospital, and the witness volunteered the statement: "I went out to see my sister, I had read in the paper where 'she' had shot 'him', meaning thereby that 'she' referred to appellant, and 'him' to Medford. There was no objection to this answer at such time, but upon its repetition later on the records show that appellant's attorneys requested the court as follows: "We ask that be stricken and that the witness be instructed to confine her remarks to the questions," to

which request the trial court took no action. In the same bill, in the court's qualification, we find the following: "The occasion of your going out to the hospital was to see whom? A. My sister. Q. Now, how did you know Homer Medford was in the hospital? A. I had read in the papers where she had shot him so I decided I would go by and see him. There was no objection made to the above testimony, and it impresses us as being practically the same as that objected to as the basis of this bill. Mr. Medford seemed to have been the cause of disagreement between those two women, and probably the reason why appellant shot at Dora Turner, and we think the admission of the statement just above quoted would cure any error, if such there was, in the admission of the witness' second statement relative to this shooting of Mr. Medford by appellant, counsel for appellant having previously asked witness Turner the following: "Homer, her husband, means nothing to you at all?", the witness answering: "not at the time * * * when she shot him, my sister was out at the hospital and you know I would go by and see him; that did not mean anything to me." The record does not evidence any objection to that statement under the cross-examination of appellant's attorneys. We think the objection came too late. In 4 Tex Jur., p. 587, it is said: "It is the general rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by other and proper testimony, or by evidence which was not objected to."

Again, in bill No. 3 it is shown by the qualification that no objection was made to the testimony complained of in such bill. The bill as thus qualified was accepted by appellant's attorneys, and they are bound thereby.

Bill of exceptions No. 4 complains because of the fact that the witness Mrs. Josephine Ruff, while on the stand testifying for appellant, was asked by the State if she had a son named Cleveland, to which witness answered "Yes." She was then asked if he was under indictment. Appellant's attorneys objected to such last question, and the trial court sustained such objection, and the witness made no answer. The bill shows that no request, either verbal or written, was made to have the jury instructed to disregard such question, there being no answer thereto. We do not think any serious error is reflected therein.

Bill No. 5 is based upon a statement made to the jury in the opening argument thereto in which it was said that appellant "had shot Homer Medford through and through." At the time such statement was made appellant's attorneys objected there-

to; the trial court sustained the objection to the phrase "through and through" but left with the jury the statement that appellant had shot Homer Medford. It is shown from the record that such a statement relative to appellant's shooting of Homer Medford appears three times therein, unobjected to twice and objected to once, and we think in the condition of the record one might be safe in saying that it is shown by the record that appellant had shot Homer Medford, and therefore the State's attorney was also within the record when his expurgated statement was left before the jury.

Bill of exceptions No. 6 complains of the following statement of the assistant district attorney in the opening argument before the jury, as follows: One Lois Smith, who had been present with the complaining witness when she had the initials tattooed upon her shoulder, was placed upon the witness stand, and gave testimony unfavorable to that of the complaining witness, and the State's attorney, while discussing such testimony, stated to the jury that this witness, Lois Smith, had been "brought in here to testify for her (the defendant). I am used to Joe Cunningham (of defense counsel) using her clearly to swear you out of the jury box. That is part of the practice. They testify for one another." This was objected to as not having been established by any evidence and being the "Unsworn testimony upon the part of the assistant district attorney, and placing before the jury an unsubstantiated, unfounded, and prejudicial statement derogatory to the defendant and her counsel, * * * and was an obvious and direct comment upon the failure of the defendant to testify in her own behalf." The trial court sustained the objection relative to such statement of the assistant district attorney not being established by any evidence, and instructed the reporter to strike out such statement, and also instructed the jury to disregard the same. The bill shows the connection in which this statement is made, and it seems that the witness had been rather intimate with one Johnny Turner, the present husband of appellant, yet also was supposedly a friend of Dora Turner, the complaining witness; at least to the point of being present with Dora when about three weeks prior to this shooting Dora Turner had herself tattooed with Medford's initials on her shoulder. We confess that the impulses and motives of most of these witnesses is confusing, to say the least, and we cannot think that any serious error is apparent, especially since the careful trial court immediately sustained the only statement in the nature of an objection made by appellant's attorney. He said: "That has not been established by any evidence," and the court then said: "I sustain that. Strike it out, and the jury will disregard it."

We see no grounds for saying that "They testify for one another," was an allusion to appellant's failure to testify, nor does the record show any offered objection on such grounds.

Bill of exceptions No. 7 complains of the assistant district attorney in his opening argument stating to the jury that the defendant "took her 38 Special and shot Homer Medford." It seems that such statement was objected to, and the objection was sustained, the following being shown in the bill, the attorney's statement being: "The record shows she took her 38 Special and shot Homer Medford. Mr. Cunningham: 'We object'. The court: 'Sustained,' " and nothing further relative thereto. The record does show that appellant shot Homer Medford, and also that she shot Dora Turner with a pistol, which was exhibited in court and referred to by two witnesses as being the pistol taken from appellant. We do not think the remark objected to, and which objection was sustained, had in it the elements of any serious error. However, it is also claimed that such remark, coupled with a further complaint that appellant was a "pistol packing defendant," had much to do with the verdict of fourteen years in the State prison awarded to appellant. The argument complained of is here set out:

"They want you to let your bosom swell up here with a great outburst of sympathy for Anna Bell, they want you to feel that this defendant here, pistol packing defendant, her home was broken up and she was so torn up in her mind, just could not resist when he saw this * * *."

"Mr. Cunningham: We object to his referring to the defendant as a pistol packing mamma. Under the law of this State where a threat is communicated to her she has a right—

"The Court: Overrule all what he said about the mamma, if that is what you want."

It was shown that appellant walked into a public cafe, in the presence of many people, and shot at Dora Turner, missing her but shooting through her hair; that the Turner woman fell and fainted; that appellant still remained in the building, and, when soon accosted by an officer while standing in the front door of the cafe, she took her revolver out of her hand-bag and said: "Is the son-of-a-bitch dead. If not, I will finish her." She then pointed her pistol at the officer, who stood still. She then "took off" up the street, the officer after her, and as he grasped her arm, another officer came up, and they disarmed her. Her pistol contained one exploded cartridge, and was otherwise

loaded all the way round. Evidently this testimony was not helpful to appellant, nor calculated to cause the jury to feel any great leniency towards her. She offered no defense, and the trial court charged on none, and none seemed called for by the testimony. There was but one objection to the court's charge, and that related to the failure to charge on aggravated and simple assault. We do not think the facts called for such charges.

We find no error shown herein, and the judgment of the trial court is therefore affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant in her motion for a rehearing reasserts the same question upon which she sought a reversal of the judgment on the original submission of the case. These questions were fully discussed by us in the original opinion and we see no need to reiterate what we have heretofore said or to amplify the same. However, we have re-examined the record in the light of her motion but find nothing there which leads us to a different conclusion from that which we expressed in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.