LOUIS JONES v. THE STATE.

No. 23372. Delivered June 5, 1946.
Rehearing Denied June 28, 1946.

The opinion states the case.

*G. Q. Youngblood,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the murder, with malice, of John Perrault, and by the jury awarded the punishment of death, hence this appeal.

It is shown that appellant was indicted by the grand jury of Gonzales County on January 29, 1946, in which indictment it was alleged that he killed with his malice one John Perrault. On January 31st thereafter appellant's relatives employed an attorney to conduct his defense, and this cause proceeded to trial on February 4, 1946, with the above noted result.

Appellant's attorney filed a motion for a continuance on such 4th day of February, which motion was by the court overruled, and we find noted in the trial court's order overruling such motion an exception thereto, but there does not appear in the record a bill of exceptions to such action of the trial court.

Mr. Branch says, on page 183 of his Annotated Penal Code,

that: "In the absence of a proper bill of exceptions the supposed error in overruling an application for a continuance will not be reviewed on appeal, and a recital in the judgment that defendant excepted or a complaint in the motion for a new trial is not a bill of exceptions," citing a large array of authorities, beginning with Nelson v. State, 1 Tex.App. 44.

There are no bills of exceptions found in the record, and there were no objections to the trial court's charge. The awarding of the extreme penalty, however, causes us to carefully consider this case from all the angles presented by the evidence which is before us.

Appellant seems to be a discharged negro soldier who lived in Dallas. In the early days of December, 1945, being possessed of a black Dodge Coupe, he seemed to be aimlessly driving about over the State, finally landing in San Antonio on December 6th. At that place he met the deceased, also a discharged negro soldier, from Louisiana. It was claimed by appellant in his confession that after some preliminaries between these two men, the deceased hired appellant to drive him to Houston for the sum of $5.00. On the way to Houston, the sole testimony as to what took place at the killing comes from appellant's confession as follows:

"* * * We drove on toward Houston about a half a mile further and pulled off on the side of the road and stopped. I had been driving my car all this time. I cut my lights on dim and I said, 'How about that money you got.' He says to me 'Money' and I said 'Yes'. He rech in his pocket and pulled out a knife and struck at me with the knife. I hit the soldiers arms and he hit the top of the car with the knife and cut a place in the top of my car about 10 or 12 inches long. The cut is still in my car, it hasn't been fixed as far as I know. When his hand came down, I caught hold of his wrist my right hand. Then I began to open the door on my side. He shuk aloose from me and I opened the door and reached back and got the gun which was just behind the seat. I got the gun with my left hand. I then switched the gun to my right hand. I never did get out of the car, I just got one foot on the running board. I got back in the car with the foot and we were scuffling. The soldier was trying to cut me. I closed the door then he made like he was trying to get close to me so I reared back and he came toward me. Then I shot him kinda on the left side of his face. He fell back on his side of the seat. I then crawled over the man I had shot and got out of the car on his side of the car. In getting out of

the car I pushed his legs over a little with my feet then I got out of the car and pulled the man out of the car by his legs. He was dead as far as I know. After I got him out of the car I took about $25 cash out of shirt pocket. I then drug him over to the side of the road, left him and turned my car around and drove toward San Antonio. I did not stop anywhere until I got of San Antonio. When I got to San Antonio I opened an envelope which the soldier had put in my car and got a check out of the envelope. This envelope had some papers of the soldier and his discharge in it. I went into a colored place there near a taxi stand on Commerce Street, San Antonio, Texas, and got something to eat but I didn't eat it. I endorsed the check which I got from the soldiers papers and cashed it in the colored place. I endorsed the check in the name of the person to which the check was made payable to. I first endorsed the check on the wrong end and the man told me to scratch it out and endorse it in the right place. I then endorsed it again in the right place and got the money on the check. The mans name that I signed to the check who the check was made out to was John Perralt. $70 sumpin dollars for the check which was the amount the check was made out for. I think I left this place around midnight and started back to Dallas, Texas. I stopped in a town I think was New Braunfels. I stopped at a Texaco station in that town and asked the man there if it would be all right if I pulled up in there and go to sleep. He told me that 'Yes, it's all right boy.' I pulled up in there, stayed there in the car and nodded until daylight on the morning of December 7, 1945. When daylight came I left toward Dallas, Texas. Before I left New Braunfels, I got out of my car and I saw there was blood on the running board on the right side of my car. I went to Waco, Texas, and stopped for gasoline. The next stop was between Waxahachie and Hillsboro, Texas, where I saw some colored men standing on the porch of a small house on the left hand side of the highway. I stopped and blowed the horn and motioned for the men to come to me and they did. There were two men that came over to where my car was parked. When they got over to me, I asked them if they wanted some army clothes and they asked me what kind was it and I told them shoes, slickers, pants, and they said 'Yes, we'll take em.' Then I gave them the clothes that belonged to the man that I had killed the night before. I don't know the names of the people I gave the clothes to. That was about 10:30 A. M. Dec. 7, 1945 when I gave the men the clothes. As soon as I gave them the clothes they went on back across the field toward their house. I then went on driving my car toward Dallas, Texas. I did not stop any more until I got to Dallas. When I got to Dallas I stopped at the

corner of Forest and Home Street at a Texaco filling station where I had my car completely washed by a colored boy. The colored boy that washed the car asked me about the blood on my car and I told him that a lady got out. I waited at this service station until they got thru washing my car and then I got my car and went on home. It must have been about a quarter after 12 when I got home. That is 12:15 P M December 7, 1945.

"When I·shot the soldier I only fired one shot."'

It is evident from the above statement introduced by the State that appellant's contention could have been that when he shot the deceased it was in his self-defense, and while deceased was attacking him with a knife. We also find some corroboration of this portion of the confession offered by the State's witness Hoffman relative to the condition of the Dodge Coupe of appellant's as follows: "* * * And in a garage I found a 1939 black Dodge Coupe in very good condition except it had 10 or 12-inch slits on the right hand side of the top of the Dodge; looked like knife cuts." This testimony was also produced by the State.

The trial court gave no charge on the law of self-defense, and none was requested. The charge consists of six paragraphs.

That it is the duty of the trial court: "In each felony case the judge shall before the argument begins, deliver to the jury * * * a written charge, distinctly setting forth the law applicable to the case. * * * Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection." Art. 658, C.C.P. There were no objections to the charge filed.

Had exceptions been leveled at the court's charge, we doubtless would have had some matters herein presented that would have called for a discussion thereof, but under the circumstances and proof it appears reasonably certain that appellant intended to commit a robbery of the deceased, and actually did rob the deceased, the portion of the sole testimony relative thereto being found in the above quoted confession relative to "How about the money you got," and the further fact that after deceased was killed appellant moved the body over into a ditch and robbed it of $25 and a government check in the amount of $71.50. In the light of these facts we find ourselves coming within the provisions of Art. 1222, P. C., which reads in part as follows:

"Homicide is justifiable when inflicted for the purpose of preventing murder, rape, robberey, * * * when the killing takes place under the following circumstances: * * *

"(5) If homicide takes place in preventing a robbery, it is justifiable if done while the robbery is in the presence of the one robbed or is flying with the property taken by him."

Homicide being justifiable upon the part of the person being robbed, it follows as a necessary corollary that at such time the robber has lost his right of self-defense, it being justifiable to take his life during such robbery.

We held in the case of McKee v. State, 118 Tex. Cr. R. 479, 42 S. W. (2d) 77, a death penalty case, as follows:

"At the time deceased armed himself and approached the scene of the homicide, appellant was engaged in committing the offense of robbery. When deceased struck appellant with his shotgun, appellant was in the presence of the person he was robbing. Deceased had the legal right to kill appellant in preventing the robbery. By his own conduct appellant forfeited his right of self-defense. Under our statute, a killing is justifiable when it takes place in preventing a robbery if done while the robber is in the presence of the one robbed or is fleeing with the property taken by him. Article 1222, subd. 5, P. C.; Brown v. State, 87 Texas Crim. Rep. 261, 222 S. W. 252; 30 Corpus Juris, p. 49. Under the facts reflected by this record, it would be a strange doctrine that would accord to the accused the right of self-defense."

In the case of Williams v. State, 120 Tex. Cr. R. 484, 48 S. W. (2d) 304, where the facts showed that accused burglarized the home of Mr. West; he was seen by Mr. West who started to get out of bed, and accused shot and killed West. Accused claimed that Mr. West, rising from his bed, said, "I will kill you," etc., and that he shot in defense of his own life. In our holding it was said:

"The issue of self-defense was not raised. Deceased had the legal right to kill appellant to prevent the burglary. Subdivision 8 of article 1222, P.C., provides: 'In cases of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building or at the place where the theft is committed, or is within reach of gunshot from such place or building.' By his own conduct, appellant forfeited his right of self-defense. McKee v. State, 118 Texas Crim. Rep. 479, 42 S. W.

(2d) 77. Under the facts reflected by this record, it would be a strange doctrine that would accord to the accused the right of self-defense."

In the present case the only proof relative to the killing shows appellant driving at nighttime off on a side road, stopping the car and dimming the lights, and turning to deceased and saying "How about the money you got?" Whereupon deceased attacked appellant, who after a scuffle killed deceased with a pistol shot, robbed him of his money, and his surplus clothing, and left him by the roadside. We think the trial judge was correct in his conclusion that appellant intended to rob the deceased, and therefore, under the statute, was not possessed of the right of self-defense. If appellant had been possessed of his right of self-defense, nevertheless it is not fundamental error sufficient to cause reversal of the case for the trial court to fail to charge distinctly setting forth the law applicable to the case, as is provided by statute, where no exceptions are taken to such charge, even though the case be one carrying the death penalty. See McKee v. State, supra; Williams v. State, supra; Scott v. State, 114 Tex. Cr. R. 631, 26 S. W. (2d) 263; Arcos v. State, 120 Tex. Cr. R. 315, 29 S. W. (2d) 395.

If the taking of the life of the would-be robber is justifiable, then it follows as a necessary corollary that the robber would not under the law be accorded the right to defend against the efforts of the person whom he was in the act of robbing.

Under the facts here presented and the record before us, we find no errors herein. The extreme penalty being a matter within the discretion of the jury, we do not find it within our province to say that same was not justified.

The judgment will therefore be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant is still insisting that the trial court erred in overruling the application for continuance, notwithstanding the absence of a bill of exception preserving the point. Authorities were cited in our original opinion, and the holdings to that effect are consistent and too numerous to require further notice.

It is now sought in the unsworn motion for rehearing unsupported by any affidavit that after the trial was concluded appellant claimed that one Jackson had instigated the trip to Houston, planned the robbery, was present and fired the shot which killed deceased. These are matters not a part of the record before us for review, and have no place in the record. If they could be considered the statements in the motion for rehearing reveal that appellant made the claim mentioned in the presence of an officer and the attorney for appellant a few hours after his trial ended, but the matter was never mentioned in the motion for new trial. The point should have been raised then and the trial court given opportunity to investigate the merit or otherwise of the belated claim of appellant, and the question brought properly before us for review.

We can not refrain from adverting to the fact that if someone other than appellant was connected with this killing that appellant and no one else was shown to have been in possession of deceased's clothing, and the check in his favor and the money taken from him.

The motion for rehearing is overruled.