## FRANK LOZANO HERRERA V. STATE.

No. 26,511. October 7, 1953.
Appellant's Motion for Rehearing Denied.
(Without Written Opinion) November 18, 1953.

*M. C. Gonzales,* and *Theo. P. Henley,* San Antonio, for appellant.

*Austin F. Anderson,* Criminal District Attorney, *Richard J. Woods,* Assistant Criminal District Attorney, San Antonio, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, life.

On the night of the homicide, appellant, together with his fellow employees Garcia, Barrera, Rabago and Palomo, as was

their custom, repaired to a tavern at the close of their day's labors. During the course of the evening Sanchez and Smith became attached to the group. Each of these young men testified for the state, and their testimony may be collectively summarized.

The witnesses stated that while at the Penjamo Bar Garcia and Palomo separated themselves from the group and went to El Safero Bar in order to use the telephone. Upon their return they reported to appellant and the remainder of their group that some of the boys at El Safero had gathered around Palomo and "looked tough." Whereupon, appellant stated, according to the different witnesses, that "nobody was going to make any trouble for them as long as he was with them," and that "we will go over there in a little while," and "this is my neighborhood, we will see about this," and "if anybody made trouble in his neighborhood he would not let them get away with it," and "well, let's go over there, I think I know the boy, I'll go talk to him." Without further comment the group went to El Safero.

Upon arriving at El Safero some of the young men made preparations to shoot pool; and appellant sought out one Gonzales, secured a pistol from him, walked up to the bar where the deceased was watching television, cocking the pistol as he went; and when the deceased turned around appellant fired the fatal shot into his chest. According to the witnesses, deceased was unarmed and made no threatening gesture toward appellant.

After having fired the shot, appellant, while retaining the pistol in his hand, demanded a cigarette and required someone to light it for him. At this juncture, according to some of the witnesses, appellant said, "Who is next?" As they were leaving El Safero appellant stated that this "was not the first boy he had ever shot," and that he had some trouble with the deceased in the past, and that he had shot the deceased in the heart.

Eddie Gonzales, testifying for the state, stated that approximately a year before the homicide the appellant had told him that he had had trouble with the deceased and that he intended to kill him. Gonzales stated that a week before the night in question he had borrowed a pistol from the appellant; that he was at the Penjamo Bar when two of the party returned from El Safero; that appellant asked him if he had the pistol; and that when he replied in the affirmative appellant told him to go to El Safero. Gonzales stated that when appellant arrived at

El Safero he gave him the pistol, and appellant walked over to the bar and shot the deceased. The court charged the jury that Gonzales was an accomplice as a matter of law.

There were several other witnesses for the state, but their testimony was cumulative of that set forth above.

Appellant, testifying in his own behalf, stated that deceased had assaulted him with a pistol some time before the homicide; that a threat made by deceased had been communicated to him; and that when he went up to the bar the deceased turned and said, "I am going to cut you"; whereupon, he shot the deceased.

On the issue of communicated threats, the appellant was supported by the testimony of one other witness, but he was unable to corroborate his testimony concerning self-defense. Other testimony for the defense related to the reputation of the deceased for violence.

The jury rejected the issue of self-defense, and we find the evidence sufficient to support the verdict.

We shall discuss the contentions advanced in appellant's brief.

Bill of Exception No. 4 complains of the failure of the court to charge that appellant's companions were accomplices as a matter of law. As noted, the court told the jury that Gonzales was an accomplice, but appellant contends that the charge should have included all those who were with him on the evening of the homicide. No objection was addressed to the court's charge because of the omission of an instruction to the effect that the other companions of appellant were accomplices, and no such charge was requested. Under the facts before us, we do not agree that such a charge was warranted. The record is silent as to any statement made by appellant's companions prior to leaving the Penjamo Bar indicating that they intended to support him in any unlawful venture. There is no showing that any of the parties other than Gonzales was accountable to the law as a principal, accomplice or accessory to the crime, and therefore their testimony need not be corroborated; and the requested charge was properly refused.

Bill of Exception No. 5 recites that while waiting for a witness to appear, with the permission of the court, certain of the

jurors were escorted to the toilet by the bailiff. The remainder of the jury remained in the jury box. On motion for new trial it was contended that this constituted jury separation. With this we cannot agree. Those members of the panel who remained in the jury box were under the supervision of the judge, while those who went to the toilet were under the supervision of the deputy sheriff. This does not constitute jury separation. Walker v. State, 40 Tex. Cr. Rep. 544, 51 S. W. 234, and Jones v. State, 47 Tex. Cr. Rep. 161, 83 S. W. 198.

By Bill of Exception No. 6 appellant complains of the failure of the court to charge on his right of self-defense against an attack less than one producing a reasonable expectation or fear of death or serious bodily injury in accordance with the provisions of Article 1224, P. C.

"It has been the consistent holding of this court that the attack there referred to has reference to an actual attack; that it does not have reference to, nor is applicable when the injured party is about to make an attack or is doing some act preparatory to the attack." Boykin v. State, 148 Tex. Cr. Rep. 13, 184 S. W. 2d 289.

The facts in the case at bar do not come within the terms of Article 1224, P. C.

Finding no reversible error, the judgment of the trial court is affirmed.