**Booker T. DICKSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 43422.**

Court of Criminal Appeals of Texas.

Feb. 10, 1971.

Ronald H. Bartlett, Houston (Court Appointed), for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with punishment assessed at 40 years.

In his first three grounds of error appellant complains that the trial court erred in failing to charge on the issues of murder without malice, aggravated assault and self-defense, despite timely presented special requested charges.

The appellant was identified as one of two men who entered the cab of the deceased, Lorraine Tones, sometime between 3 and 4 a. m. on June 29, 1968, near the Continental Bus Station in the city of Houston. Approximately fifteen minutes later the deceased was found dying while lying on the steps of the Sacred Hope Funeral Home. He had been shot in the back. His taxicab was 140 feet away headed into a fence with one of the doors open.

The cause of death was shown to be a gunshot wound to the back which penetrated the left lung, the aorta and the esophagus. A .22 caliber bullet was recovered from the body.

Perry Braggs, another cab driver, testified that shortly before the deceased was discovered on the funeral home steps he had observed one man dragging and slapping another near the location of the funeral home. C. B. Rice, who lived above the funeral home in question, related he was awakened about 4 a. m. by "someone hollering 'oh, no, no,'" and that he heard some gunshots.

On July 9, 1968, the appellant contacted the police through an intermediary and surrendered. After being properly warned he gave a written extrajudicial confession.

In such statement, which was introduced by the State, appellant stated he, S. B. Bradley and two other men, later shown to be Thomas and McAllister, agreed in the early morning hours of June 29, 1968, to rob a cab driver. Appellant, who had been drinking, further stated that when they got to the bus station McAllister gave him a .22 caliber derringer, and that he and Thomas told the cab driver to take the two of them to the Fifth Ward. The statement revealed that appellant fell asleep in the cab and that he "woke up" when the cab ran into a fence. He then observed Thomas and the deceased "scuffling" outside of the car. When the deceased ran behind a bush and "went for his pocket" appellant admitted he took the gun and "shot at the cab driver" though he "did not intent to hit him *in the back.*" He related that he grabbed and carried the deceased to the funeral home steps thinking it was a church. He then rejoined Bradley and McAllister who were nearby and returned the gun to McAllister.

Testifying for the State Bradley related that when the appellant returned he stated "he had to shoot a guy" and "got $13 off of him and a billfold and a lighter."

The appellant, testifying in his own behalf, admitted he had entered an agreement to rob a cab driver, but stated he passed out in the cab as a result of the whiskey and beer he had been drinking and that when he awoke after the cab struck the fence he had "no intention of robbing." He testified that "by that time I forgot all about it. I woke up and I was upset. I didn't know what was going on. * * *"

His other testimony was similar to that of his written statement except that he stated he shot to the left of the bush and away from the deceased, and that he did not intend to shoot him at all.

 It is well established that failure to instruct the jury on the issue of murder without malice is not error unless there is some evidence which calls for such a charge. 4 Branch's Ann.P.C., 2d ed., Sec.

2302, p. 658. If the issue was raised it was by virtue of the appellant's testimony alone. We do not view his testimony as showing he voluntarily committed the act charged without justification or excuse "under the immediate influence of a sudden passion arising from adequate cause." Rayson v. State, 160 Tex.Cr.R. 103, 267 S. W.2d 153.

In Cook v. State, 152 Tex.Cr.App. 51, 211 S.W.2d 224, it was held the trial court was not required to charge upon the question of murder without malice where the defendant killed the deceased during an act of robbery. See also Smith v. State, 154 Tex.Cr.R. 234, 225 S.W.2d 846; Smith v. State, 168 Tex.Cr.R. 102, 323 S.W.2d 443; David v. State, Tex.Cr.App., 453 S.W.2d 172. Cf. Cassell v. State, 154 Tex.Cr.App. 648, 216 S.W.2d 813, reversed 339 U.S. 282, 283, 70 S.Ct. 629, 94 L.Ed. 845 (upon question of racial discrimination); Rayson v. State, supra.

Likewise, we do not view the evidence as requiring the submission of a charge on self-defense under the circumstances presented. Appellant's testimony was too slight and doubtful to raise an issue.

In Herrera v. State, 159 Tex.Cr.R. 175, 261 S.W.2d 706, 708, in discussing the necessity of a charge under Article 1224, V. A.P.C., this court wrote:

"It has been the consistent holding of this Court that the attack there referred to has reference to an actual attack; that it does not have reference to, nor is applicable when the injured party is about to make, an attack or is doing some act preparatory to the attack." See also Johnson v. State, 167 Tex.Cr.R. 289, 319 S.W.2d 720; Leonard v. State, 169 Tex.Cr.R. 147, 332 S.W.2d 562; Mays v. State, 170 Tex.Cr.R. 293, 340 S. W.2d 43; Howard v. State, 172 Tex.Cr. R. 352, 357 S.W.2d 403.

In the case at bar, the appellant saw no weapon in the possession of the deceased. Just prior to the deceased being shot in the

back the appellant saw him struggling with appellant's partner in the planned robbery and then run behind a bush at which time he "went for his pocket." The most that can be said for the appellant's testimony is that the deceased taxi driver was preparing to make an attack against him and the appellant was afraid the deceased would shoot him. Under such facts, there was no necessity of giving the charge requested.

■ Further, the act charged was committed during the perpetration of a robbery planned by the appellant and others. The robber has no right of self-defense against the owner of the property sought to be taken if the owner would be justified in killing to recover the property or to prevent the offense. McKee v. State, 118 Tex.Cr.R. 479, 42 S.W.2d 77; Smith v. State, 128 Tex.Cr.R. 34, 78 S.W.2d 621; Jones v. State, 149 Tex.Cr.App. 441, 195 S.W.2d 349; 29 Tex.Jur.2d, Homicide, Sec. 46.

With regard to appellant's claim that the court erred in failing to charge on aggravated assault, we call attention to what was said in Smith v. State, Tex.Cr.App., 411 S.W.2d 548, 553:

"One of these grounds of error relates to the trial court's failure to respond to appellant's objection and charge the jury on the lesser offenses of assault with intent to murder, aggravated assault and simple assault. Instructions on these offenses need not be given unless they are called for by the evidence and this depends upon the facts and circumstances of each case. 29 Tex.Juris.2d Sec. 286, pp. 533, 534. These charges are not called for by the evidence in the case at bar. The mere denial by the appellant of an intent to kill, standing alone, is not sufficient to raise these issues. See Royal v. State, 154 Tex.Cr.R. 567, 228 S.W.2d 162. Ordinarily the failure to give a charge on aggravated assault or simple assault is not error where the appellant killed the deceased with a deadly weapon per se. Beasley v. State, 171 Tex.Cr.R. 115, 346 S.W.2d 123; Turner v. State, 148 Tex.Cr.R. 491, 187 S.W.2d 991; Richards v. State, 147 Tex.Cr.R. 118, 178 S.W.2d 517; Blanton v. State, 144 Tex.Cr.R. 198, 161 S.W.2d 1063."

■ Lastly, without citation of authority, appellant complains of the court's action in permitting appointed counsel for the codefendant Bradley "to stand behind him and prompt him" when he testified as a State's witness. At the time Bradley, who had not been granted immunity, was called as a witness, the court carefully inquired if the witness was represented by counsel and had been advised of his rights. Without objection he "invited" Bradley's attorney to "stand next to the witness" and instructed Bradley his counsel was available for consultation before any questions were answered. On direct examination appellant's counsel objected when Bradley's counsel "leaned over" and "whispered something in his ear" when the prosecuting attorney asked "What else, Samuel Bradley?" When the objection was overruled and the witness was told he could answer, appellant's counsel then inquired if the witness wanted to consult his attorney. Under the circumstances, we perceive no error.

Finding no reversible error, the judgment is affirmed.

ODOM, J., not participating.