## J. O. CURRY V. STATE

No. 25209. March 21, 1951
On the Merits May 9, 1951.
Rehearing Denied June 20, 1951.
Appellant's Second Motion for Rehearing Denied October 17, 1951.

Hon. John F. Sutton, Judge Presiding.

*Brooks, Duke, Templeton & Brooks,* and *E. J. Brooks,* Abilene, and *William E. Davenport* and *Justin A. Kever,* San Angelo, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was convicted of murder without malice and assessed a penalty of two years in the penitentiary.

The indictment in this cause is regular in form and the bills of exception cannot be appraised without a statement of facts. According to the transcript and the file mark of the district clerk on the statement of facts, this statement was not filed within the ninety days prescribed by law and for which period the trial court may extend the time for filing the statement of facts and bills of exception.

Appellant's attorneys have filed a motion asking this court to construe the filing date to be on December 15th, instead of January 9th. We are not empowered to hear evidence in such matters nor consider motions filed, unless there is admission of such facts as will justify the conclusion. The clerk of the district court has power to change his file mark if he has made a mistake; or a certificate from him that he had received the instrument within the proper time and had erroneously, thereafter, placed on it a different file date would be considered as an admission by the state. In such event we would be justified in receiving the statement of facts. In the state of the record, however, we are not permitted by law to consider the statement of facts in the case and cannot, for that reason, appraise the bills of exception.

The judgment of the trial court is, accordingly, affirmed.

ON MOTION FOR REHEARING.

WOODLEY, Judge.

The statement of facts is shown to have been in the hands of the clerk of the trial court for filing on December 15, 1950, and the date of filing has been corrected by the clerk to read December 15, 1950, instead of January 9, 1951. The statement of facts will therefore be considered.

In the absence of an order signed by the trial judge and entered of record extending the time for such filing, appellant's bills of exception cannot be considered, such bill not having been filed within 30 days after the motion for new trial was overruled and notice of appeal given (on October 9, 1950). The term at which trial was had was a special term which began on August 11, 1950, and under the order calling such term would terminate on January 1, 1951, at 10 A.M.

The indictment charged that appellant voluntarily and with malice aforethought killed Buddy Bailey "by pounding and beating the said Buddy Bailey's head against the pavement of the street."

We overrule appellant's contention that such allegation is vague and indefinite, and hold that the indictment is sufficient to apprise the accused of the charge against him and to put him upon notice of what the state would offer to prove.

Appellant, an oil field worker and former prize fighter, testified that he came into San Angelo looking for a job and, after visiting other bars, came to the Concho Bar about midnight where he first encountered the deceased.

Appellant and one Eddie Lawton sat down at the booth where the deceased was seated and the deceased, resenting their presence, requested the waitress to ask them to leave, which she did. An argument ensued and soon thereafter appellant and the deceased went outside and began to fight.

Appellant testified that he told the deceased that he didn't want to fight him or have any trouble with him and walked out the door; that as he got outside the door the deceased remarked, "You are going to fight me, you cowardly son of a bitch," and hit him on the chin pretty hard; that he got up and fought the deceased for some 30 seconds; that during the fight he told the deceased "I am choking to death," to which the deceased replied "That is what I aim to do."

Appellant testified further that someone in the crowd said, "Stomp him, kick him, Buddy;" that he then got loose, fought for about a minute and finally hit and dazed the deceased, then hit him again and knocked him "off the curb down on to the car and down to the sidewalk." According to appellant's testimony and that of his witnesses, this ended the fight.

The state's witnesses gave a quite different version of the affair.

W. W. Pike, President and Manager of a local taxicab company, testified:

"When I walked over there they were struggling on the sidewalk and they struggled against one of those meters and fell off the curb against the front of a car and then fell on the pavement, that would be down into the street, pavement. Then this man (indicating) got the other one and bumped his head against the pavement. Well, I don't remember just the exact number of times he did it, but several times. He bumped his head by just going up and down with it (indicating). I couldn't say at the present time whether he had a hold of the man's head or ear or head, or what, but he definitely had his head bumping it; and he was raising his head 6 or 8 inches every time and going back down with it; and I could hear his head when it hit the pavement. I'd say he was bumping his head hard on the pavement. Well, then somebody pulled the man off and he attempted to get back and they held him and stood across the one *laying* on the ground so nobody could get to him, but the man never did go back on him after they pulled him off. The man that they had pulled off attempted to get back but they held him there.

"When they fell off the curb I wouldn't know who hit the car first, but the one that hit first fell on to the pavement and he didn't move any more; only when he was bumping his head."

Webb, the operator of the Concho Bar, testified in part:

"Buddy Bailey put one arm around the parking meter, holding it, and he had this fellow (indicating) around the neck with the other, and the other fellow had his arm around Buddy Bailey's neck, and they remained in that position for a while, and then suddenly this larger fellow broke him loose and he fell against this car and he hit him, and when he did he plumped back over on his back on the sidewalk, and then this larger

fellow jumped on him and got him by the hair of the head and jerked it up and down six or seven times, and then I realized that the man was being hurt bad. I jumped out in the crowd and a little short fellow by the name of Lawton and me pulled this larger fellow off Bailey and brought him back against the curb, and he kept trying to break away and wanted to get at him. He said, 'Turn me loose, I want to kill the son-of-a-bitch.' And we hung on to him."

Clyde Parnell, a salesman, also testified that appellant pounded the deceased's head against the pavement several times.

Dr. G. F. Madding, a surgeon practicing at San Angelo, testified that the deceased died a few hours after he was admitted to the hospital, the cause of his death being "some form of external trauma." He testified:

"By 'trauma' I mean any form of external trauma that could have caused the injury which he had on the front of his body as well as on the back of his head. 'External' is 'outside' and 'trauma' means injury, some force from without. Buddy Bailey's skull was fractured, the basal part of it, that is at the bottom, the floor of it; the floor runs up forward and it was really the front part of the floor of the skull; and the reason we know that was fractured is the fact that the spinal fluid was running out of his nose in a continuous stream, and that is the only way you can get that sort of a picture is with the basal skull fracture. There was hemorrhage underneath the scalp, a big swelling in the back of the head which was another indication of spinal trauma of some nature, an outside injury or lick, or something there."

On cross-examination, the doctor testified:

"The fracture we know about was behind the eyes, behind the nose; it was a basal skull fracture. Yes, it is possible that could have been done when he hit the bumper going down, that is possible."

The doctor further testified that it was not necessarily a fact that the fracture would have been higher up on the skull if caused by the head having been pounded against the street. He also explained that it was possible to have an injury inflicted at one place resulting in a fracture at a different location.

Both appellant and his witnesses denied that he beat the deceased's head against the street, and gave support to the defensive theory that the deceased's head struck the bumper of an automobile and his death was a result of such accidental striking of the automobile while the parties were engaged in a fist fight.

We are unable to agree that the evidence is insufficient to sustain the jury's finding that the death of the deceased was caused by appellant pounding and beating his head against the pavement as charged in the indictment.

The trial court submitted the law of self-defense against an attack giving rise to apprehension of death or serious bodily injury, but declined to charge upon the right of self-defense against a milder attack. Appellant objected to such charge and requested a special charge on the latter subject and reserved exception to the court's action in refusing to amend his charge or to give the requested charge.

We do not find in the record any testimony raising the issue that appellant struck or killed the deceased in defending himself against a lesser attack, after having first resorted to all other reasonable means to repel the attack as required under Art. 1224, P.C. Appellant denied that he beat the deceased's head on the pavement, and claimed that the death wound was caused by accident.

As we view the testimony, appellant and the deceased entered voluntarily into mutual combat, a fist fight, and appellant's defense was adequately submitted to the jury in the following paragraph of the charge to which no objection was directed:

"The defendant, J. O. Curry, urges that he did not intentionally kill the deceased, Buddy Bailey, but that the death of Buddy Bailey happened by accident or misfortune in a fight between the defendant, J. O. Curry, and the deceased Buddy Bailey, wherein the deceased's head accidentally hit an automobile during such fight; and you are therefore charged that if you find from the evidence, or if you have a reasonable doubt thereof, that the deceased, Buddy Bailey, died from injuries received by his head accidentally hitting an automobile, then in that event the defendant would not be guilty as charged in the indictment, and you will acquit him and say by your verdict not guilty."

The evidence being deemed sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

Appellant's motion for rehearing forcefully complains that the jury were not instructed in accordance with the terms of Art. 1224, P.C., defense against milder attack.

An analysis of the record in this case reveals two well-defined theories as to how deceased met his death:

(1) Appellant's testimony was that he and deceased were fighting, and during the progress of such fight the deceased fell or was knocked off the sidewalk and in the course of his fall hit his head on an automobile, thus causing his death by accident. If the jury had accepted this theory of the case, they would have acquitted appellant under the paragraph of the charge applying the law of accident or misfortune.

(2) The testimony of the state's witnesses was that after deceased had fallen on the pavement, he lay there motionless and appellant caused his death by beating his head up and down upon the pavement, as charged in the indictment, the form of which we approve.

Nowhere in the record is there any middle ground or other theory upon which the case could have been decided.

In order for a homicide to be justified under Art. 1224, P.C., it must appear:

a. That the accused resorted to all other means to prevent the injury, save retreat,

b. That the person killed was in the very act of assaulting the accused at the time he was killed, and

c. That the accused used no more force than was necessary as it appeared to him, viewed from his standpoint, to repel the attack.

Appellant's testimony does not raise the issue that he killed the deceased in defense against a milder attack after first resorting to other means and using no more force than was necessary.

Therefore, it was not error for the court to refuse to charge under the terms of Art. 1224, P.C.

Being convinced that our original disposition of the case was proper, the appellant's motion for rehearing is overruled.

## ON APPELLANT'S SECOND MOTION FOR REHEARING

DAVIDSON, Judge.

Appellant insists that the evidence raises the issues of self-defense from the lesser attack, as provided by Art. 1224, P. C.

The facts have again been examined in the light of this contention.

It will be remembered that the facts presented two distinct and variant issues: One, as shown by the state witnesses, was that the death of deceased was caused by appellant pounding deceased's head against the pavement. The other, as shown by the testimony of the appellant and his witnesses, was that deceased came to his death from an injury to his head received in falling against an automobile when knocked down in a fist fight by the appellant.

Appellant's defensive rights under such an issue, as also the lack of an intent to kill, was amply covered in the court's charge.

Neither the state nor appellant contended that any blow inflicted in the fight caused the death of deceased.

We remain convinced that the trial court was not in error in failing to submit self-defense from the lesser attack.

Appellant's second motion for rehearing is overruled.

Opinion approved by the court.