MCKINNEY LEONARD V. STATE

No. 31,418. February 3, 1960
Motion for Rehearing Overruled March 9, 1960

148

*Musslewhite & Musslewhite, (R. C. Musslewhite of Counsel)* Lufkin, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge

Tried under indictment alleging murder with malice appellant was found guilty of murder without malice and assessed a term of five years. The jury rejected his claim of self-defense and defense of his home, and his application for suspended sentence.

Appellant's wife Jimmie Lee was the sister of the deceased, Joseph Bogany, and the state witness Haywood Bogany.

Sandra Bogany, wife of the deceased, also testified as a state witness.

By the testimony of the witnesses for the state and the confession of appellant, introduced without objection, these facts were established.

Jimmie Lee, appellant's wife, accompanied Joseph Bogany and his wife Sandra to the Black Cat and the 400 Club where they drank some beer. Appellant appeared in the club and his wife talked with him.

Appellant was at one of the clubs when Joseph, his wife and appellant's wife left for home. When they arrived at the home of appellant and Jimmie Lee, she invited them to go in, saying "We're not going to be here long."

The confession of appellant thus described what then occurred: "I had been home about 5 minutes or so when my wife, Joseph and Sandra came in and my wife attacked me again and I slapped her and then Joseph got on me and about that time Joseph's brother Haywood Bogany came in the back door of my house and he came on into the middle room where we were and Haywood was getting Joseph to leave and while he was getting Joseph out of the house I backed up to the dresser and I got my 38 special out of the dresser drawer and started shooting at Joseph. I do not know how many times that I shot at him but I don't think I fired more than 4 times. After Joseph hit the floor I shot him 2 times in the back and then I put the gun in my pocket and I went out the back door."

The testimony of Sandra and Haywood Bogany and the bullet wounds found on the body of the deceased are consistent with this version of the killing.

Appellant testified. He admitted that he signed the confession, but said he could not remember making the statement above quoted. His version of the shooting was that his wife came in and started arguing and he "kind of shoved her back"; that she came into him again and he caught her by the hand and she said "turn my hand loose"; that the deceased came running in and commenced beating him in the mouth and chest; burst his lip and knocked him over the bed; that appellant and his wife both ordered the deceased to leave; that Haywood, who had come in the back door, put his arms around the deceased and he and Sandra were carrying him out of the house; that the deceased was telling them to turn him loose and said "I'm going to kill the son of a bitch." Appellant testified that he then reached in the drawer of a dresser and got his gun; that deceased about the same time "broke loose from Haywood and Sandra and came back in a crouch, running just as fast as he could. He was in a crouch like this, and so that's when I started shooting."

Appellant testified that he fired "about three times while he was backing up" because he was scared of the deceased and felt that the deceased was about to kill him or do him some "serious violence" if he did not stop him.

He denied that he shot the deceased twice more as he was lying on the floor at his feet, or that he shot the deceased in the back.

The principal grounds for reversal relate to the court's charge.

The court, in his charge, instructed the jury upon the law of self-defense and told the jury that if they believed that appellant was attacked by the deceased, or it reasonably appeared to him at the time that he was about to be attacked by the deceased " * * * in such manner that there was created in the mind of the said defendant a reasonable expectation or fear of death or serious bodily injury at the hands of the said deceased, and that the defendant reasonably apprehended the danger of losing his life or of suffering serious bodily injury, viewed from his standpoint at the time, and under such circumstances killed the deceased, if he did, then the law excuses or justifies the kill-

ing, or if you have a reasonable doubt thereof, you must give the defendant the benefit of such doubt and acquit him * * * ."

The jury was also instructed: " * * * if you should believe from the evidence, or have a reasonable doubt thereof, that at the time of the killing of the deceased by the defendant, if he did, viewed from the defendant's standpoint at the time, it reasonably appeared to the defendant from the acts and conduct of the deceased at the time, or from the acts and conduct of the deceased, coupled with his words, if any, that his, the defendant's life was in danger, or that he was in danger of serious bodily injury, then he is entitled to be acquitted and you should so say by your verdict."

Also, the court charged the jury that appellant had the right, under the law, to control his property and to refuse anyone the right to enter or to remain thereon and charged: " * * * if you believe from the evidence, or have a reasonable doubt thereof, that the deceased, Joseph Bogany, at the time he was shot, was either an intruder or a trespasser in the home of the defendant or, being his guest and upon being ordered by the defendant to leave said premises, if he was so ordered, refused to do so, then the said defendant would be justified in using all reasonable and necessary force to expel the said Joseph Bogany from his home, and if, after he had exhausted all other available means at his command at the time, in his effort to retain possession of his property or to eject or prevent the deceased from entering the same, he shot and killed the deceased, then the defendant should be acquitted, and you should say by your verdict 'Not Guilty.' "

In the instructions given were embodied appellant's right to continue to act and resist an attack or threatened attack so long as it reasonably appeared to him, from his standpoint at the time, that it was necessary to protect himself.

Several objections were leveled at the failure of the court to include in his charge an instruction on the right to defend against an attack which did not give rise to apprehension of death or serious bodily injury.

If appellant did not believe that the deceased was about to inflict upon him serious bodily injuries or kill him, as he testified, the killing was not justified under the evidence. Art. 1224 P.C. applies only to an actual attack, not to appearance of danger

from a threatened attack not giving rise to apprehension of losing life or suffering serious bodily injury. The overruling of these objecions was not error. Ayala v. State, 152 Tex. Cr. Rep. 416, 214 S.W. 2d 634; Curry v. State, 156 Tex. Cr. R. 379,242 S.W. 2d 421; Garza v. State, 159 Tex. Cr. R. 105, 261 S.W. 2d 575; Beverly v. State, 131 Tex. Cr. R. 433, 99 S.W. 2d 925; Montes v. State, 163 Tex. Cr. R. 416, 291 S.W. 2d 733.

Another objection was to the omission of an instruction to the jury that they might consider the relative size and strength of the parties. The deceased being a younger, larger and stronger man, such an instruction would have been appropriate but its omission is not ground for reversal. 4 Branch's Ann. P.C., Sec. 2313. See also Garello v. State, 31 Tex. Cr. R. 56, 20 S.W. 179.

Viewing the charge as whole, it appears that the rights of appellant were fully protected and reversible error is not shown in the overruling of the objections addressed to it.

The judgment is affirmed.