**Ralph Carl POWERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 38043.

Court of Criminal Appeals of Texas.

Nov. 3, 1965.

Rehearing Denied Dec. 15, 1965.

Farmer, Maddin, Eichelberger & Walker, Waco, for appellant.

James E. Barlow, Dist. Atty., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, death.

The state's testimony shows that the deceased, Morris Weldon (Dicky) Renfro, nineteen years of age, was killed by a bullet fired from a .32 calibre pistol in the hands of appellant. The killing occurred in the parking area of Castle Hills Manor, an apartment complex on Blanco Road in the city of San Antonio, where the Renfro family lived.

It appears that on the night in question, the deceased and his friend and football teammate from Hardin Simmons University, Larry McNair, who was visiting him in San Antonio, had dates with two girls, Sharon Walters, then unmarried, and Gene Dakis. During the evening, the two couples went to a downtown movie and, after the movie, went to a cocktail lounge, where the boys had two beers. Around midnight they returned to Castle Hills Manor and went to Sharon's apartment, in the same complex, and listened to records. Shortly after midnight they put on their bathing suits and went downstairs to the pool and went swimming. In some fifteen minutes, Sharon's sister, who was visiting their parents at the apartment, came to the pool and asked the two couples to take her home. The boys then put on shirts and the girls put on blouses and proceeded to take her home, in a car belonging to Sharon's parents. After staying at the sister's apartment for five minutes, the two couples re-

turned to Castle Hills Manor. On the return trip, Sharon drove the car, the deceased rode in the front seat, and the other couple rode in the back.

McNair testified that when they drove into the parking lot he observed an automobile parked in the lot with three people in it. As he and the deceased were getting out of their car the other car began leaving and stopped near where he and the deceased were standing. The witness and the deceased then approached the driver's side of the car and the deceased asked the driver if he could help him. The driver replied in the negative and stated that they were just turning around. The deceased then said, " 'You didn't have to come in here to turn around, did you?' " Thereupon, the appellant, who was seated in front, next to the driver, asked the deceased if he was getting smart with him. The deceased said, " 'No.' " Appellant got out of the car, came around the front with a pistol in his hand, and cursed the deceased.

Appellant then told the deceased he wanted to fight. The deceased said nothing. Appellant stated that the deceased was trying to get smart with him, to which deceased replied that he was not, that he did not want any trouble, and that "they had just had trouble in the parking lot, so he just wanted to see what was going on." Appellant stated that "he didn't care, he thought he was trying to get smart with him," and the deceased said, " 'Well, if we are going to fight * * * Put the gun away, and we'll go on the grass and fight.' " Appellant first said that he was not going to, but then handed the pistol to the driver of the car and hit the deceased with his fist. Before the deceased "could do anything," appellant got the gun back from the driver, pointed it at the witness McNair, and told him to stay where he was. Appellant then hit the deceased on the head four times with the pistol, as the deceased was backing away and appellant was advancing upon him. After backing the deceased for a distance of between ten and fifteen yards, appellant shot the deceased with the pistol. Appellant then ran to his car, told his companions to turn the lights off and " 'get the hell out of here.' " Appellant then fled from the scene, in the car, and two days later surrendered himself to the district attorney at the Bexar County courthouse.

The two girls, Sharon Walters—whose married name at the time of trial was Sharon Walters Jines, and Gene Dakis, both testified as witnesses for the state and gave their version of the shooting, which supported the state's theory that appellant was the aggressor in the fatal difficulty.

It was further shown that, when shot, the deceased was unarmed, and clad in swim trunks and a Banlon shirt.

An examination of the deceased's body by Dr. Ruben C. Santos, the acting Bexar County medical examiner, disclosed that the deceased had been shot, at close range, one time, in the right front chest. An autopsy performed upon the deceased disclosed that the bullet had gone through the aorta, and this, the doctor stated, was the cause of death.

Testifying as a witness in his own behalf, the appellant, twenty years of age, stated that on the night in question he was with two companions, John Wayne Jarvis and Kenneth Strawn; that Jarvis was looking for a friend and missed the street they were looking for and drove into the Castle Hills Manor parking lot. Appellant testified that, as they were leaving, the deceased and McNair stopped them and asked what they were doing, and that he got out of the car with his pistol because it appeared they were looking for trouble. As he started around the front of the car, McNair stopped but the deceased kept coming toward him. When the deceased started to "jump on" the appellant, the latter hit the deceased with the pistol. A discussion then ensued between them about fighting "it out" and appellant put the gun in the car. Appellant stated that the deceased and McNair then started toward him and

he grabbed the gun and told them to stop. McNair stopped but the deceased did not, "so that's when I went to hit him * * * the gun went off—it came out of my hand and went off at the same time. I didn't know what happened. Kind of stunned me, I guess." Appellant swore that at the time the gun fired, the deceased was advancing upon him but that he did not intentionally shoot him.

The issue of appellant's guilt was submitted to the jury upon a charge on the law of self-defense and also of accident.

Complaint is made to the court's instructions as to appellant's right of self-defense.

In the original charge, the court fully instructed the jury, in paragraph VI, as to appellant's right to defend himself against an attack being made upon him by the deceased, Morris Weldon (Dicky) Renfro. In making application of the law to the facts, the jury were instructed that if they believed from the evidence that at the time appellant killed the deceased it reasonably appeared to him that the deceased was about to make an attack upon him and that he was in danger of losing his life or suffering serious bodily injury at the hands of the deceased, then they would find appellant not guilty and by their verdict acquit him.

The converse thereof was then given to the jury, with the following instruction:

"If you believe from the evidence, beyond a reasonable doubt, that at the time and place in question it did not reasonably appear to the defendant, Ralph Carl Powers, that he was in any danger of death or serious bodily injury at the hands of the deceased, viewing all the facts and circumstances from the defendant's standpoint at the time, then you will find against the defendant on his issue of self-defense."

Certain objections were made by appellant to the court's charge on self-defense,
among them being his eighth objection, which stated:

"* * * for the reason that said converse charge is an undue restriction and limitation upon the defendant's right of self-defense and is a charge upon and a comment upon the weight of the evidence and, in effect, reverses the burden of proof and, in effect, the Court tells the jury that it is not bound to be governed by the Court's charge on the defendant's right of self-defense. And the defendant here and now moves the Court to delete from his charge all of that portion found on Page 7 of the Court's charge."

Appellant, in his ninth objection to the charge, objected and excepted to the same because it did not charge the jury on the law giving him the right to defend himself against a joint attack made by the deceased, Renfro, and Larry McNair, and moved the court to instruct the jury on the law with reference to his right to defend himself against a joint attack.

In response to appellant's objection, the court proceeded to amend his original charge and, among other instructions, added paragraph VI-A, which instructed the jury on the right of appellant to defend himself against a joint attack being made upon him by the deceased, Renfro, and Larry McNair.

After the charge had been amended and before it was read to the jury, appellant re-urged all of his objections made to the original charge, which were by the court overruled.

■■ We overrule appellant's contention that the final charge given by the court on self-defense was contradictory and ambiguous because the converse charge given in paragraph VI on appellant's right to defend against an attack by the deceased had the effect of nullifying the charge given in paragraph VI-A on his right to defend against a joint attack by the deceased

and McNair. The instruction by the court in paragraph VI, submitting the converse of appellant's theory of self-defense against an attack by the deceased, Renfro, was proper. Johnson v. State, 125 Tex.Cr. R. 381, 68 S.W.2d 202; Barkley v. State, Tex.Cr.App., 214 S.W.2d 287. We do not construe this instruction given by the court in paragraph VI—i. e.: to find against appellant on his issue of self-defense if the jury found that it did not reasonably appear to him that he was in danger of serious bodily injury at the hands of the deceased—as being applicable to his right of self-defense against a joint attack granted to him under paragraph VI–A of the charge. A reasonable interpretation of such instruction is that it applied only to the issue of appellant's right of self-defense against the deceased. A defendant is in no position to complain of the court's failure to submit the converse of a charge on self-defense.

■ Nor do we agree that the court erred in overruling appellant's objection to the charge on self-defense because it did not instruct the jury that in determining the issue they might take into consideration the relative size and strength of the parties. In view of the unrestricted charge given by the court on self-defense, the failure to further charge on the relative size and strength of the parties is not error. Leonard v. State, 169 Tex.Cr.R. 147, 332 S.W.2d 562; Gilbert v. State, 170 Tex.Cr.R. 335, 340 S.W.2d 808.

■ Complaint is made in bill of exception #3 to certain argument by special prosecutor Fred Semaan in his opening argument to the jury, when he stated:

"'I want to begin by telling you that on the night of July the 19th, 1963, in the County of Bexar and State of Texas, two young men, both residents of this town, met in a driveway of an apartment house off Blanco Road. We had the right to infer from

the evidence in this case that one was a fine, clean-cut young man. There isn't a word in the testimony to the contrary.'"

Counsel for appellant objected to the argument on the ground that:

"* * * it is not a fair deduction to be drawn from any of the evidence in the case, and it is not within the record. And we object to this statement made by Mr. Semaan as being prejudicial to the rights of the defendant.'"

Appellant's objection was overruled by the court in the following language:

"'Objection be overruled, but the jury will be instructed that argument of Counsel is not evidence and is not to be considered by you as such. However, Counsel may draw reasonable deductions from the evidence.'"

Following the court's ruling and appellant's exception thereto, the special prosecutor continued in part as follows:

"'I don't think there is any question that the evidence shows that one young man, Morris Weldon (Dicky) Renfro—was a graduate of Highlands High School here in San Antonio, that at the time this happened, *that* he was at home on vacation from Hardin Simmons University, where he was going to school and playing football. The evidence shows that another young man was out there, a man that we don't know too much about. We know that he carried a pistol, that he had a bad habit of carrying a pistol, *by* his own admission twice from the witness stand he told you that * * *.'"

No objection is shown to have been made to the latter argument.

We do not construe the remarks complained of as being testimony on the part of the special prosecutor but only remarks which were a reasonable deduction from the evidence. No error is presented.

Jones v. State, 153 Tex.Cr.R. 345, 220 S. W.2d 156; Sanchez v. State, 156 Tex.Cr. R. 468, 243 S.W.2d 700.

No error appearing, the judgment is affirmed.

Opinion approved by the court.