**Cresensio GAVIA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45325.**

Court of Criminal Appeals of Texas.

Nov. 29, 1972.

Rehearing Denied Jan. 17, 1973.

William B. Smith, Midland, for appellant.

James A. Mashburn, Dist. Atty., and Jerry Buckner, Asst. Dist. Atty., Midland, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for murder; the punishment, twenty-five (25) years imprisonment.

The appellant urges that the instructions as submitted to the jury deprived him of a charge on a defensive theory to which he was entitled under the evidence. We agree.

The appellant made a timely objection in writing to the court's omission of a charge on self-defense against an unlawful violent attack as provided for by Article 1224, Vernon's Ann.P.C.[1]

His request was for a charge on the right of self-defense to milder attack as distinguished from the charge on the right of self-defense arising from a reasonable expectation or fear of death or serious bodily injury. The latter charge was submitted.

The State's brief points to the case of Curry v. State, 156 Tex.Cr.R. 379, 242 S.W. 2d 421 (1951) as enunciating the well recognized requirements which the evidence must meet before a defendant is entitled to the charge insisted upon by this appellant. It is as follows:

"In order for a homicide to be justified under Article 1224, V.A.P.C., it must appear:

"a. That the accused resorted to all other means to prevent the injury, save retreat,

"b. That the person killed was in the very act of assaulting the accused at the time he was killed, and

"c. That the accused used no more force than was necessary as it appeared to him, viewed from his standpoint to repell the attack."

■ In determining whether any defensive charge should be given, the credibility of evidence or whether it is controverted or conflicts with other evidence in the case may not be considered. When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury. It is then the jurors' duty, under the proper instructions, to determine whether the evidence is credible and supports the defense.

There is some difficulty in considering the evidence in this case. The appellant could not testify in English. He understood and spoke Spanish and it was necessary to use an interpreter. The record reflects that the interpreter had some trouble in translating the testimony accurately for the record. The patience and fairness on the part of the court and the parties are to be commended.

■ Although the deceased was unarmed, he was a considerably larger man than the appellant. There had been prior difficulties between the deceased, the appellant and the appellant's brothers.

Both the appellant and the deceased were in the Hitching Post Bar. The appellant had been drinking beer with some older friends. The appellant, using offensive language, threw a pool ball onto the pool table and started to leave. The deceased was the owner of the pool table, which had been leased to his relatives who operated the bar.

---

1. Article 1224, V.A.P.C., provides:
   "Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, and any person interfering in such case in behalf of the party about to be injured is not justified in killing the aggressor unless the life or person of the injured party is in peril by reason of such attack upon his property."

The deceased hollered at the appellant saying, "Hey, don't throw the balls like that on the table." The appellant asked what harm it would do and picked up a ball and threw it back onto the table. The deceased picked up the ball and struck the appellant in the face with it. The appellant started to leave but he noticed blood on his face which felt hot. The appellant then asked the deceased why he had struck him and the deceased replied, "Oh, you are nothing to me," and "he said that—he told me that I was nothing to him, and that he could kill me any time because I was nothing."

The deceased then "jumped on" the appellant and "pushed" or "wrestled" him out of the bar. The appellant took a pistol from his pocket as they were wrestling. The deceased grabbed the appellant's hand and the pistol was fired into the air. They fell sideways with the deceased being on top of the appellant. While the deceased was on top of him, the appellant passed the pistol from his right to his left hand behind the deceased's neck. While "fighting" and "hugging each other" the appellant fired the pistol with his left hand twice before the deceased released his hold on the appellant. The appellant said he shot the deceased "because he jumped on me and I had to defend myself." "When I shot at him, I wanted him to let go of me. And, when I did that he did, and, I just didn't shoot again . . . The only thing I was thinking of right then was to just get out of there so nothing would happen to me." The appellant testified he was not attempting to kill the deceased. He fled from the scene and did not learn that he had killed the deceased until the next day. He then voluntarily surrendered to the sheriff.

The evidence summarized and quoted is mainly from the testimony of the appellant; however, a good deal of this testimony was corroborated by other witnesses.

Again, without passing on its credibility, we find the evidence sufficient to meet the test of Curry v. State, supra, and to require the submission of the requested charge. See and compare Jaramillo v. State, 151 Tex.Cr.R. 34, 204 S.W.2d 622 (1947); Prater v. State, 142 Tex.Cr.R. 626, 155 S.W.2d 934 (1941) and Martinez v. State, 142 Tex.Cr.R. 143, 151 S.W.2d 817 (1941).

The judgment is reversed and the cause remanded.

Opinion Approved by the Court.