Freddie G. SWAIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 55946.

Court of Criminal Appeals of Texas, Panel No. 3.

July 18, 1979.

David Van Os, Austin, for appellant.

Ronald P. Earle, Dist. Atty., and Richard E. Banks, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS and TOM G. DAVIS, JJ., and CORNELIUS, C.

OPINION

WILLIAM J. CORNELIUS, Commissioner.

Appellant was convicted of burglary of a habitation. Punishment, enhanced pursuant to V.T.C.A., Penal Code, Section 12.-42(d), was set at life imprisonment.

At about 11:45 p.m. on August 15, 1975, residents who lived near the house in question observed an automobile stop under a street light. They then saw two men leave the automobile and walk up the street north bound. The men then crossed the street to the west and disappeared down a driveway adjacent to the residence in question. As they walked along the street, one of the men was seen carrying something about ten to twelve inches long in a plastic bag that looked like a tire tool in a lady's stocking. At least two of the residents identified appellant as one of the two males. Being called to the scene on a suspicious vehicle report describing the automobile as a white Buick, police officers were unable to locate a vehicle of that description, but were pointed to a grey Oldsmobile and received other information that caused them to walk north to the residence in question adjacent to the driveway where the two males were last seen. The officers knocked on the front door of the residence and received no response. They then returned, conferred further with the observers, and then went over and examined the grey Oldsmobile. The officers then returned north to the residence, and in the company of a neighbor, went down the driveway over a chain link fence on the south side of the residence and into the backyard area. One of the officers then noticed a figure, later identified as appellant, crouched by some outside stairs leading to an overhanging porch. The other officer and a civilian approached a lower patio door below the stairs as the first officer went around the western portion of the stairway. They heard the first officer call out, and when they turned around, they saw him struggling with the appellant. The civilian testified that he saw the appellant come off the staircase from about half way down it. No other witness testified to having seen the appellant anywhere on the premises, and no witness testified to having seen appellant inside the residence building. Later inspection of the premises revealed that the door to the residence was open, there was a mark on the door, a television set was in the doorway, and a television set was in the backyard of the residence with a tire tool next to it. When appellant was apprehended he had a man's sock on one of this hands. Appellant signed a written statement which, after a *Jackson v. Denno* hearing, was admitted into evidence. In it he stated that he had burglarized the house but that he used "no force, just pull back the door and I had tools I didn't even use." The defense attempted to show that the confession was unreliable because of appellant's extreme intoxication from alcohol and narcotics at the time of the offense and even up to the time the statement was given.

In its main charge the trial court instructed the jury that "A habitation is a structure or vehicle that is adapted for the overnight accommodation of persons." The jurors were further instructed that unless they believed beyond a reasonable doubt that appellant knowingly and intentionally entered a habitation without the effective consent of its owner and there committed or attempted to commit theft, they must acquit appellant. After the jurors had deliberated for some time, they presented two written questions to the trial court. The first asked where the officers apprehended appellant. It was not answered. The second inquired: "Please define habitation more explicitly for us. We would like to know if the steps are considered part of the habitation? The yard?" In response to that question the court gave the following supplementary instruction:

"You have asked for a more explicit definition of habitation. The Court charges you as follows:

'Habitation' means a structure or vehicle that is adapted for the overnight accommodation of persons and includes:

A. each separately secured or occupied portion of the structure or vehicle; and

B. each structure appurtenant to or connected with the structure or vehicle."

Appellant's counsel objected in writing to the supplementary instruction on the grounds that (1) it was misleading and would permit the jurors to find appellant

guilty of burglary if they should believe that he only entered the unenclosed stairway attached to the house; (2) the definition was so vague and ambiguous as to be constitutionally "infirm"; and, (3) the court should have charged the jury that the unenclosed stairway and the yard are not portions of the habitation.

 We do not believe that the Legislature, in enacting Sections 30.01 and 30.02 of the Penal Code, intended to expand the concept of burglary of a habitation to include an entry upon an unenclosed and unsecured stairway attached to a residence. Compare *Day v. State*, 534 S.W.2d 681 (Tex. Cr.App. 1976). Yet the supplemental instruction defining habitation as each *structure appurtenant to or connected with* a structure or vehicle adapted for the overnight accommodations of persons was, without more, calculated to lead the jurors to believe that such an entry would constitute the offense, especially when the instruction is considered together with the jurors' questions specifically inquiring if the stairs were to be considered a part of the habitation.

It is true that the supplemental instruction was in the exact words of the statute, and that is ordinarily sufficient. But it is also true that an accused is entitled to an affirmative instruction on every defensive theory raised by the evidence, whether the evidence is produced by the state or by the defendant, and whether it be strong, weak, unimpeached or contradicted. *Day v. State*, 532 S.W.2d 302 (Tex. Cr.App. 1976); *Thompson v. State*, 521 S.W.2d 621 (Tex.Cr.App. 1974); *Shaw v. State*, 510 S.W.2d 926 (Tex.Cr.App. 1974). And in determining whether such a charge should be given, the credibility of the evidence raising it or contradicting it may not be considered. *Gavia v. State*, 488 S.W.2d 420 (Tex.Cr.App. 1972).

In this case the testimony of the state's witnesses showed only that appellant was on the stairway or on the ground in the yard. The affirmative defense that appellant entered only the yard or the stairway was thus raised by some evidence. As appellant properly objected and called the court's attention to the need of a charge that the mere entry upon the stairway alone would not be burglary of a habitation, he was entitled to have such a charge given. Compare *Foyt v. State*, 135 Tex.Cr.R. 664, 122 S.W.2d 641 (1938); *Elliott v. State*, 109 Tex.Cr.R. 270, 4 S.W.2d 61 (1928). See also *Gober v. State*, 127 Tex.Cr.R. 304, 76 S.W.2d 518 (1934); *Randolph v. State*, 117 Tex. Cr.R. 80, 36 S.W.2d 484 (1931); *Duke v. State*, 42 Tex.Cr.R. 3, 57 S.W. 652 (1900). The failure to give the charge was calculated to mislead the jury to appellant's prejudice and requires a new trial.

The judgment of the trial court is reversed and the cause is remanded.