Tommy HILTON, Appellant,

v.

STATE, State.

No. 2–83–100–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 6, 1983.

Rehearing Denied Oct. 26, 1983.

T.W. Schueller, Wichita Falls, for appellant.

Jack A. McGaughey, Montague, for appellee.

Before FENDER, C.J., and JORDAN and ASHWORTH, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted by a jury of causing bodily injury to a child 14 years of age or younger, under Tex.Penal Code Ann. sec. 22.04 (Vernon 1974), by inserting an object of an unknown nature into the vagina of a twenty-two month old child. He was assessed a ten year probated sentence.

The appeal is based upon three grounds of error.

We affirm.

This is a circumstantial evidence case, and in appellant's first ground of error he attacks the sufficiency of the evidence to sustain the conviction, saying that such evidence amounts only to a "strong suspicion" or "mere probability" of his guilt. It is therefore necessary for us to review the evidence in some detail.

On the afternoon of Sunday, April 12, 1981, Tommy Hilton and his wife, Kimberly (Kim), mother of a twenty-two (22) month old daughter, Alicia, were in the process of moving into a new house they had rented in Nocona, Texas. Alicia had spent the previous night with her grandmother, Kimberly's mother, Sue Samples, at the grandmother's home, which was approximately five or six blocks from the Hilton's house.

Kimberly Hilton, who has since the event in question divorced appellant, about noon on Sunday, April 12, 1981, drove over to her mother's house, picked up Alicia and returned with her to her home. Tommy and Kimberly were involved with different chores around their new house and were, among other things, hanging curtains. Late in the afternoon, apparently between 4:00 p.m. and 4:30 p.m., Kimberly drove back to her mother's house to get some curtain rods, leaving Alicia at home, asleep in bed. Appellant and Alicia were the only ones in the house. Kimberly was gone at this time for approximately fifteen (15) minutes, and when she returned, according to her testimony at trial, Alicia was still asleep on the bed. Shortly after Kimberly returned, she and Tommy discovered that Alicia was bleeding from the vaginal area.

Kimberly and Tommy took Alicia back to Kimberly's mother's house, where she was again examined by both Kimberly and Sue Samples. They all then took the child to the hospital in Nocona, where she was very briefly examined by a doctor, who directed Kimberly and Tommy to take her to the hospital in Wichita Falls, for a more complete examination and for possible treatment, as she was still bleeding considerably from the vaginal area. There she was examined by a Dr. Tim Kable, an obstetrician and gynecologist, whose testimony at the trial will be discussed later in this opinion.

For our purposes, it is important at this point to note several crucial facts gleaned from this record. Before Alicia's vaginal bleeding was discovered late Sunday afternoon, there was no evidence whatever of any injury to her, nor had she complained or shown any indication of pain or discomfort prior to this time. As previously stated, she had spent the previous night, Saturday, with her grandmother, Sue Samples, who had changed Alicia's diapers several

times between Saturday night and noon Sunday, when Kimberly came to pick Alicia up and return to her home, with no indication of any vaginal problem. Also, just before Kimberly returned Alicia to her home, she and her mother, Sue Samples, had changed Alicia's diaper, and found no evidence at all of any bleeding or of any injury. The child had had some diarrhea, but no injuries or problems in the genital area.

Tommy Hilton, appellant, was later charged with and indicted for causing bodily injury to a child under fourteen (14) years of age, and testified at his trial. He denied that he at any time inserted any object into Alicia's vagina and testified that he loved Alicia and considered her as his own daughter. There was also testimony from two witnesses, man and wife, that approximately one month after the occurrence of April 12, 1981, Kevin Underwood, Kimberly Hilton's brother and uncle of Alicia, had told them that he, Underwood, and not Tommy Hilton, was the one who had injured Alicia. The evidence showed that Underwood, a young boy of about sixteen (16) at the time in question, had been to Six Flags in Arlington, Texas, returning home to Nocona, where he lived with his mother, Sue Samples, about 3:00 a.m. on Sunday, April 12, and that he had gone straight to bed, awakening only after his sister, Kimberly, had taken Alicia back to her own home. Underwood denied that he ever told the two witnesses that he was the one who had molested and injured Alicia, and denied that he had anything to do with it. The jury apparently believed him, and believed further, from all the evidence, that Tommy Hilton did, as alleged in the indictment, inflict the injury upon his stepdaughter.

Dr. Tim Kable, the obstetrician and gynecologist, testified that he examined Alicia at about 7:40 p.m., on Sunday, April 12, 1981, and since she was very restless and uncomfortable it was necessary to anesthetize her to examine her and to suture a laceration to the perineum, the area between the vagina and the rectum. This required three or four sutures. Because Dr. Kable's testimony as to the nature and location of the injuries is important with respect to appellant's contention that the State did not prove Alicia's injuries were not self-inflicted or that they were inflicted by another person, we quote in part from Dr. Kable's testimony:

Yes. *There was severe injuries to the vagina, and perineum, which is the structure between the entrance of the vagina and the rectum.* There was a laceration about—I am referring to my operative notes. At six o'clock, which would be up and down to us, six o'clock on the clock, there was a laceration about three centimeters which would be a little over an inch, in length, extending from the entrance of the vagina to the entrance of the rectum, and it was about three centimeters in depth. It was all the way down, but not through the rectum. *The vagina and the vault of the vagina were filled with blood and bloodclots. In the top of the vagina next to the cervix, which would be a distance of about four inches, was a laceration on the left side of the cervix about a quarter of an inch in length, and this appeared to be the site of considerable bleeding. There was also evidence of abrasion, rubbing, like you do if you brush your face, on the posterior surface of the vaginal wall. This was also high in the vagina near the cervix.* (Emphasis added).

Dr. Kable also testified that although he could not be certain as to what caused these lacerations, in his opinion, they were caused by a blunt object, probably the length of a finger, and as thick as one or possibly two fingers. He said that since the vagina in an infant of this age is quite small, he thought it would probably be as long and as wide as one finger, the index finger.

He also said the wounds were recent, and while he could not say exactly when they occurred, he repeatedly said that in his opinion they had been inflicted within a few hours, first he said within twelve hours, and later he said within six hours of when he first saw her at 7:40 p.m. on April 12, 1981. He emphasized, on cross-examination by ap-

pellant's counsel, that "I would say it was a recent injury on that day, within hours."

Appellant argues that the evidence in this case fails to exclude every other reasonable hypothesis except his guilt, as it must in a circumstantial case. *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Plunkett v. State,* 580 S.W.2d 815 (Tex.Cr.App.1978). He says that the State has failed to prove that the injuries to Alicia were not self-inflicted, or that they were inflicted by another person, or that he, appellant, was the third person who inflicted the injuries. He contends that the evidence does not show when, how, or why these injuries were caused, and that the only evidence pointing to his guilt at all is the fact that he was alone with the child for about fifteen (15) minutes on the day the injuries appeared. He further argues that mere presence alone at the scene of the crime is not sufficient to sustain a conviction, and in this he is correct. *Wright v. State,* 603 S.W.2d 838 (Tex. Cr.App.1979); *Pickering v. State,* 596 S.W.2d 124 (Tex.Cr.App.1980). Appellant places great emphasis on his and Kimberly's testimony that the infant was asleep all the time he was alone with her late in the afternoon of Sunday, April 12, 1981. He says if he had inserted an object into her vagina, she would have awakened and been crying upon Kimberly's return home. We think the answer to this is that the jury was not bound by this testimony, and apparently they rejected it. The fact remains that there were no signs of injury to Alicia before Kimberly left her alone with appellant and that fifteen (15) minutes later she was bleeding from the vagina.

▮ It is well established that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused and that proof amounting only to a strong suspicion is insufficient. *Stogsdill v. State, supra; Wright v. State, supra.* Each fact need not point directly and independently to the guilt of the accused, however, as the cumulative effect of all the incriminating facts may be sufficient to support the con-

viction. *Stogsdill v. State, supra; Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977).

▮ We believe in this case that considering all of the evidence in the light most favorable to the verdict, as we must, that even though it is all circumstantial that it is sufficient to support the conviction of appellant. We hold that the evidence, taken as a whole, was sufficient to exclude every other reasonable hypothesis except the guilt of appellant. The evidence is thoroughly reviewed and analyzed above, and is, we hold, supportive of the verdict and was sufficient for the trier of facts in this case to conclude beyond a reasonable doubt that appellant, as alleged, inflicted bodily injury on his twenty-two (22) month old stepdaughter.

▮ As for appellant's contention that all the State proved in this case was that he was alone with the child at a time when the injuries could have been inflicted, the evidence succinctly stated, is to the effect that before appellant was alone with Alicia on April 12, 1981, there was no evidence of any physical injury to her, and immediately thereafter, the injury was discovered. We point out that the evidence in this case, discussed at considerable length herein, showed that they occurred at the time he was alone with the child, that they were not self-inflicted, that the wounds were deep in the vagina of the child, and that they were caused by some blunt instrument, such as an index finger. Mere presence at the scene of the crime alone is not sufficient to conclude that the accused committed the offense beyond a reasonable doubt. *Johnson v. State,* 537 S.W.2d 16 (Tex.Cr.App. 1976). But the accused's presence, combined with other facts, may show guilt of the accused, and that is the situation here. *Johnson v. State, supra; Wright v. State, supra; Plunkett v. State, supra;* and *see Ruben v. State,* 645 S.W.2d 794 (Tex.Cr. App.1983), which has some factual similarity to the instant case.

For the reasons stated, appellant's first ground of error is overruled.

In his second ground of error, appellant complains of the trial court's refusal to instruct the jury that mere presence at the scene of a crime is, alone, insufficient to conclude that the accused committed the offense beyond a reasonable doubt. In support of this ground of error, appellant cites the general proposition that an accused is entitled to an affirmative instruction on every *defensive theory* raised by the evidence, whether the evidence is produced by the State or by the defendant and whether it is strong, weak, unimpeached or contradicted. *Swain v. State,* 583 S.W.2d 775, 777 (Tex.Cr.App.1979). (Emphasis added). While we agree with this general proposition, we find it to be of no support to appellant's contention. The concept of "mere presence", unlike the affirmative defense raised in *Swain, supra,* is not a *defensive theory.* A finding of the "mere presence" of the appellant at the scene of the crime could hardly exculpate the appellant or provide a defense to the commission of the offense.

In the case at bar, the trial court properly instructed the jury on the standard of proof beyond a reasonable doubt and the State's burden in a circumstantial evidence case. As such, the charge adequately protected appellant's rights and no harm is shown. *Jones v. State,* 566 S.W.2d 628, 629 (Tex.Cr.App.1978); *Morgan v. State,* 644 S.W.2d 766, 773 (Tex.App.—Dallas 1982).

Appellant's second ground of error is overruled.

Appellant's third ground of error states that the trial court erred in disjunctively submitting the issue of appellant's culpable mental state when the indictment conjunctively alleged appellant's culpable mental state. Appellant cites us to this court's opinion in *Almanza v. State,* 645 S.W.2d 885 (Tex.App.—Fort Worth 1983) as authority for this ground of error. We find *Almanza* to be inapposite. *Almanza* condemned the practice of changing the indictment's conjunctive allegations to the disjunctive in the court's charge where *aggravation* or *jurisdiction* were involved. Neither aggravation nor jurisdiction is involved in the charge complained of in the case at bar.

Under the statute, proof that the defendant acted intentionally, knowingly, recklessly, *or* with criminal negligence is sufficient to establish the scienter element of the offense. Tex.Penal Code Ann. sec. 22.04(a) (Vernon Supp.1982–83). (Emphasis added). Therefore, it is not error for the trial court to charge the jury in the disjunctive substituting the word, "or", for the conjunctive, "and" in the indictment. *Cowan v. State,* 562 S.W.2d 236, 240 (Tex.Cr. App.1978); *Gates v. State,* 643 S.W.2d 183, 186 (Tex.App.—Tyler 1982); *Grissom v. State,* 625 S.W.2d 424, 426 (Tex.App.—Fort Worth 1981).

Appellant's third ground of error is overruled.

Judgment is affirmed.